No. 46,538

State of Kansas, *Appellee,* v. Vera Irene Phippen, *Appellant.*

(494 P. 2d 1137)

Opinion filed March 4, 1972.

*B. L. Pringle,* of Topeka, argued the cause and was on the brief for the appellant.

*Nick A. Tomasic,* deputy county attorney, argued the cause, and *Vern Miller,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

Harman, C.: Appellant Vera Irene Phippen was convicted by a jury of the offense of robbery in the first degree and given the statutory sentence. She appeals from that judgment.

Evidence for the prosecution revealed the following: At about 9:45 p. m. on October 13, 1969, a lone female, later identified as appellant, entered the Save-U-More Grocery located at Twelfth and Osage streets in Kansas City, Kansas. She was wearing a black scarf and a brown leatherlike coat and carried a hand-tooled purse. The only other persons present were three store employees—a woman in charge, the cashier, and a stock boy who remained in the back of the store during the ensuing episode.

Appellant walked around the store and then approached the supervisor, talked with her and asked her to go to the meat counter in the rear and procure some bologna. When the supervisor went to the rear of the store in compliance with this request appellant turned to the checkout stand and displayed a small black handgun.

She announced a holdup and told the cashier to open the cash register and give her all the money. The cashier opened the drawer. Appellant grabbed a sack, put about $138.00 from the drawer in it and ran out the door. The store employees immediately telephoned the police, giving a general description of the robber.

Several police officers responded promptly. En route to the scene two officers observed a green Thunderbird automobile stalled in the street just one block west of the grocery store. The vehicle was in the right northbound lane of traffic with its hood up. A man was standing beside the left front fender. Several officers entered the store and were given a more complete description of the robber, her garb and purse. The alley behind the store was dirt with spots of water standing in it. An investigating officer noticed muddy tire tracks in the alley which led directly up to the rear wheels of the stalled Thunderbird, indicating it had recently been driven from the alley. No one was in evidence around the car. A brown leather coat, a brown hand-tooled purse, a black scarf and a holster were lying in plain view in the car, as well as syringes and papers. Appellant's name was in the purse. Police impounded the vehicle and its contents.

Upon immediately checking the license tag of the vehicle two police officers secured an address and then as a result went to a nearby apartment which was rented by persons named Coffey. The officers arrived there about an hour after the robbery. They knocked at the front door and when there was no response they went to the back door. En route to the back door they looked through a kitchen window and saw five persons inside, two women and three men, seated at a table. The officers recognized one of the men, later identified as a Roger Lofton, as the person they had seen standing by the stalled Thunderbird a few minutes after the holdup. When a dog barked the lights in the room went out. The two officers had previously summoned additional help but none had yet arrived. The officers then knocked on the back door, identifying themselves as police officers. Mr. Coffey, the tenant, told officers they could enter, which they did. Four persons were in the room, including appellant. Mr. Lofton had disappeared. One officer went toward the front part of the apartment in search of him and located him in a bathroom. This officer arrested Lofton and at the same time discovered a pistol in a wastebasket in the bathroom. Appellant was also arrested and taken to the police station. Upon

seeing the hand-tooled purse in possession of the officers appellant asked where they had obtained her purse. Shortly thereafter she was placed in a police lineup and identified by the two women employees as the store robber.

At the trial the two employees identified appellant as the robber, and the scarf and the brown leather jacket as clothing worn by her at the time. These articles along with the holster found in the car were admitted into evidence. The gun retrieved from the wastebasket was identified by the cashier as the one placed upon her by appellant and, over the latter's objection, it was received in evidence. An authenticated record of appellant's conviction of the offense of first degree robbery in 1966 in the state of California was also received in evidence.

As a witness in her own behalf appellant testified that she lived in Topeka and on the day in question had come to Kansas City with Mr. Lofton to visit the Coffeys; the trip was made in a green Thunderbird in which she had left her purse; while she was visiting the Coffeys Lofton left the house; about 9 or 9:30 that evening she left, dressed in a leopard skin coat with a black collar, and walked to the store in question; after conversing with the supervisor about buying either garlic or ring bologna, she walked over to purchase some candy for the children; suddenly realizing she did not have her billfold or her purse with her, she walked out of the store and returned to the Coffey's house; later Lofton returned and stated his car had "blown up". Appellant denied having seen the brown coat, black scarf, the gun or the holster and denied having committed the robbery.

Appellant presents several assignments of trial error. She first complains that in his *voir dire* examination of the jury and again in his opening statement the prosecuting attorney twice referred to her as "the criminal defendant". She charges this prejudiced her in the eyes of the jurors. No objection was made, or any question raised, at trial level respecting these statements, which omission may well reflect the gravity of the complaint. Without condoning the use of epithets which in any way might be construed in derogation of the presumption of innocence which attaches to one on trial for crime, we cannot believe the jury was in anywise influenced to appellant's prejudice by the conduct complained of.

Of more concern are other remarks made by the prosecution in *voir dire* examination. After briefly outlining the charge the prosecuting attorney stated:

"Now, you realize that the State will present evidence to back up the facts—back up the charge; that the criminal defendant, Vera Phippen has the opportunity to testify and you can expect that if she does tetstify, she is going to deny everything that the State says, or she is going to try to contradict it. If she didn't do that, we wouldn't be here today."

Motion for mistrial was immediately made, and discussion had thereon, outside the presence of the jury. The trial judge denied the motion and in open court stated to the jury:

"THE COURT: I feel I should say something. In the first place, any person charged with a crime is presumed to be innocent. That presumption goes with them until their guilt is established to the satisfaction of the jury beyond a reasonable doubt. No person is required to give any evidence. I don't know whether this lady is going to take the stand or not. She may testify; she is not required to. If she does, or if she doesn't, you will be appraised in the Court's instructions as to any effect this may have.

"Now, I don't think Mr. Tomasic meant anything wrong by saying that she would take the stand and deny it. He can't know this. She may take the stand and deny it or she may not take the stand at all; she has these options.

"I think you may go ahead.

"MR. TOMASIC: Thank you, Your Honor. Ladies and gentlemen of the jury: What I was getting at is after the State presents its evidence, the defendant will have the opportunity, if she desires, to present evidence. Then when this is finished, you people—the twelve that are selected—will have a job to do. You are going to have to make a decision, and if you feel that the evidence warrants a conviction, you will have to come back to this courtroom and tell the Judge and tell the attorneys and tell Vera Phippen that you believe that she is guilty.

"Now, what I want to know is, is there anyone here who feels that either he or she cannot return to this courtroom and tell the Judge that they feel the evidence warrants Vera Phippen being guilty? If anyone feels that they can't do that, we would like to know right now."

Appellant contends the incident violated her constitutional right not to testify and to have no allusion made by the prosecution to the exercise of that right and in fact placed her in a position where she was compelled to testify. Her principal argument is the trial judge's instructions were inadequate to dispel the prejudice which the remarks calculatedly generated in that he failed at the time of the incident to tell the jury that no inference of guilt could be drawn from any failure of appellant to testify.

A prosecutor skates on thin ice when he ventures into the area of the exercise by an accused of his constitutional right against self-incrimination (see *Griffin v. California*, 380 U. S. 609, 14 L. ed. 2d 106, 85 S. Ct. 1229). The subject is scarcely a proper one for *voir dire* inquiry and its exploration before a jury at any time might well lead to impermissible constitutional infringement. Here, how-

ever, the inquiry stopped before the mention had extended that far. Counsel's statements did not amount to comment on appellant's failure to testify because the trial had not yet reached a stage evincing her choice as to testifying. The trial court immediately instructed the jury as to the presumption of innocence of an accused until proven guilty beyond a reasonable doubt and it pointed out that appellant was not required to testify. The court also gave assurance it would further instruct the jury at the appropriate time respecting appellant's choice as to her testimonial rights. We think the trial court carefully safeguarded appellant's right against self-incrimination and no harm was done.

Appellant next complains of the conduct of the police lineup at which she was identified. The lineup was held in the absence of counsel; however, appellant concedes she was advised of her right to have counsel present. Her complaint is directed toward the difference in ages of the various women who participated in the lineup.

We think appellant may not now challenge the propriety of the lineup by reason of her position at trial, revealed in the following colloquy between her and her counsel:

"MR. FEIRING: Your Honor, we mentioned this question of a lineup, and I think, for the record, we will withdraw any objection to the lineup, and the defendant agrees with me that we want the evidence on the lineup in, because it would serve a useful purpose. Is that correct, Irene?

"THE DEFENDANT: Yes."

Appellant not only waived objection to the lineup evidence, she expressly requested its admission as a matter of trial strategy. It is fundamental that a litigant who invites and leads a trial court into error will not be heard on appeal to complain of that action (*Smith v. Veeder Supply Co.*, 137 Kan. 124, 19 P. 2d 699).

Appellant complains the trial court erred in admitting the handgun into evidence because it was obtained in violation of constitutional standards prohibiting unreasonable search and seizure. We think the contention has no merit for the reason the gun was properly taken as incident to a lawful arrest of Roger Lofton. The arresting officers had seen Lofton at the stalled Thunderbird soon after the holdup of the grocery store. Muddy tracks indicated the vehicle had recently been driven from the alley in the rear of the store. When the officers returned to the vehicle Lofton had disappeared but contained therein in plain view was further incriminating

evidence relevant to the holdup—a black scarf, brown coat and hand-tooled purse, plus a holster. Soon thereafter Lofton was seen inside a room at an address discovered through a check of the vehicle's license tag. The arresting officers were lawfully on the premises when they first sighted Lofton inside and they had express permission from the tenant to enter that apartment. They had probable cause to arrest Lofton, and incident thereto within the close confines of the bathroom, both as a matter of self-protection and to avoid concealment or destruction of evidence, to seize the handgun (see *Chimel v. California*, 395 U. S. 752, 23 L. ed. 2d 685, 89 S. Ct. 2034).

Appellant also complains of the admission of the coat, scarf and holster into evidence, again on the basis of unlawful search and seizure. At trial appellant stated she had no objection to the reception of these items into evidence when offered by the prosecution. Her statement of points upon appeal makes no mention of this issue as mandated by Rule 6 (*d*) of this court relating to appellate practice (205 Kan. xxix). Review of this purported error is precluded for each of the foregoing reasons. Beyond this, however, considering the issue on its merits, no error appears. As already indicated, the officers looked through the window of the stalled auto and saw the incriminating articles in plain view so there was neither unreasonable search nor seizure (*State v. McMillin*, 206 Kan. 3, 476 P. 2d 612).

Appellant complains she was not permitted to show that charges against Roger Lofton were dismissed by a police officer. She says Lofton was the real culprit and that her best defense was prejudiced by this refusal but she presents nothing cogent in support of this statement. The matter arose upon her cross-examination of a police officer. Colloquy between trial counsel reveals appellant made no real proffer of evidence at the trial to support her allegation that charges against Lofton had been dismissed. In any event, in view of the direct rather than circumstantial evidence against appellant, the fact someone else may have participated with her in the holdup would not be a defense to her and the trial court did not improperly handle this collateral issue of disposition of other charges.

Appellant contends the court erred in admitting evidence of her previous conviction of first degree robbery. At trial defense counsel stipulated the authenticity of the record evincing that conviction in

California but objected to its reception on the basis of irrelevancy. Appellant renews this objection and also challenges the adequacy of the limiting instruction given to the jury. Both contentions have frequently been determined by this court adversely to appellant's position (see cases cited at K. S. A. 1971 Supp. 60-455).

Finally appellant challenges the sufficiency of the evidence to sustain her conviction. She was positively identified as the robber by the two store employees, each of whom talked with her and observed her face at extremely close range. Other incriminating evidence need not be iterated. Suffice it to say the guilty verdict was amply supported by evidence.

Judgment affirmed.

APPROVED BY THE COURT.