No. 47,577

STATE OF KANSAS, *Appellee*, v. GREGORY FREEMAN, *Appellant*.

(533 P. 2d 1236)

Opinion filed April 5, 1975.

*Michael B. Roach*, of Wichita, argued the cause and was on the brief for the appellant.

*Clifford L. Bertholf*, assistant district attorney, argued the cause, and *Curt T. Schneider*, attorney general, *Keith Sanborn*, district attorney, and *Stephen M. Joseph*, assistant district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

FONTRON, J.: The defendant, Gregory Freeman, was convicted of aggravated robbery in violation of K. S. A. 21-3427 (Weeks 1974). He was sentenced to a term of from eight years to life and has appealed.

At about 3:15 p. m., September 20, 1973, two black men armed with pistols held up and robbed Shakey's Pizza Parlor at 13th and Oliver in Wichita, Kansas. The robbers forced the two employees who were present to lie face down on the floor where they were bound with tape. Some $94 or $95 was removed from the cash register and a wrist watch and billfold were taken from Donald Hartke, one of the employees.

After the robbers left on foot, the police were called and the alarm was spread. Mr. Freeman was apprehended about 4 p. m., walking east near Poplar and 13th, approximately 24 city blocks east of Oliver and 13th. Freeman lived in the 2700 block on East 13th Street.

At the time of his apprehension the defendant was carrying a long playing record album and a sack containing two cans of soup. He was taken to the police station where police found and removed from his clothing one ten-dollar bill, two five-dollar bills, ten one-dollar bills, plus some change, and a Timex watch which Hartke identified as his watch by the color, the brand and by the accumulation of flour and pizza sauce in the band.

That same afternoon Hartke identified the defendant as one of the robbers from some twenty or twenty-five pictures shown him by the police. Later that evening both Mr. Hartke and J. D. Fitch, the other employee, went to the police station where Hartke picked Freeman out of a line-up of five persons and Mr. Fitch, who was unable to identify the defendant from his face, recognized him from his voice; the way he talked, kind of soft; and the way he said "feet" when asked to say "tape their feet."

Although six points are set out in the defendant's specification of errors, only three were briefed and argued. We shall consider the remaining three as having been abandoned, as well they might have been.

In the first place the defendant contends his motion for mistrial should have been sustained at the close of the *voir dire* examination. The background of the claim is this: In the state's examination of Mrs. Lister, a prospective juror, the following exchange occurred:

"MR. WALL [Counsel for the prosecution]: And you understand that the defendant doesn't have to take the stand?

"MRS. LISTER: Yes, sir.

"MR. WALL: And if he doesn't take the stand, you can't draw a wrongful inference from that, you understand that?

"MRS. LISTER: Yes.

"MR. WALL: He has the right to remain silent and you can't penalize him for that. Right?

"MRS. LISTER: Yes.

"MR.WALL: Now, if he chooses to take the stand, just because he relinquishes that right, you don't give him a plus. Do you understand that?

"MRS. LISTER: Yes, sir, I do.

"MR. WALL: You view the evidence based upon that experience you have in common with mankind. Do you understand that?

"Mrs. Lister: Yes.

"Mr. O'Hara [Defense counsel]: May it please the Court, I am going to object to any reference to whether the defendant gets on the witness stand or not.

"The Court: Sustained."

So far as we can understand his argument, the defendant contends the questions asked of Mrs. Lister were somehow, in total effect, an impermissible comment on his constitutional right not to take the stand; and that the statements made by Mr. Wall in questioning Mrs. Lister would penalize him whether or not he exercised his privilege not to testify.

K. S. A. 60-423 provides in effect that every accused has the privilege not to be called as a witness and not to testify, while K. S. A. 1974 Supp. 60-439 provides substantially that if a privilege not to testify is exercised, neither the judge nor counsel may comment thereon except at the request of the party exercising the privilege.

We are at a loss to understand how the questions propounded on *voir dire* either violated the defendant's privilege not to testify or constituted impermissible comment thereon. Mr. Freeman did not exercise his privilege; instead he took the stand and testified in support of his defense of alibi. Neither can we say that Mr. Wall's questions embraced an incorrect statement as to the law even though it was the court's function to instruct the jury on the law, not Mr. Wall's.

The trial court summed up the matter rather neatly by saying, after hearing defendant's motion for mistrial:

"The Court: I think what he was doing was pre-empting the Court and trying to second guess the Court's instructions. If the defendant does not take the stand I will instruct the jury to the effect that he did not have to take the stand and that essentially that is what Mr. Wall said."

A situation which in many respects is comparable to the one at hand may be found in *State v. Phippen*, 208 Kan. 962, 494 P. 2d 1137, where the prosecuting attorney told members of the jury panel during the *voir dire* examination that the defendant "has the opportunity to testify" and they could expect, if she "does testify, she is going to deny everything that the State says, or she is going to try to contradict it." The defendant in that case claimed that the incident violated her constitutional right not to testify as well as her right to have no allusion made by the prosecution as to the exercise of that right and, in fact, put her in a position where she

was compelled to testify. In rejecting the defendant's contentions, this court said:

"A prosecutor skates on thin ice when he ventures into the area of the exercise by an accused of his constitutional right against self-incrimination (see *Griffin v. California,* 380 U. S. 609, 14 L. ed 2d 106, 85 S. Ct. 1229). The subject is scarcely a proper one for *voir dire* inquiry and its exploration before a jury at any time might well lead to impermissible constitutional infringement. Here, however, the inquiry stopped before the mention had extended that far. Counsel's statements did not amount to comment on appellant's failure to testify because the trial had not yet reached a stage evincing her choice as to testifying. . . ." (pp. 965, 966.)

In the instant case, as in *Phippen,* the trial was in its beginning stages; it had not progressed to a point evidencing the defendant's choice as to testifying. While we cannot say the defendant's substantial rights were prejudicially affected by what happened during the *voir dire,* we wish to reiterate the *caveat* found in the *Phippen* case, and to urge its observance in the future.

For his second ground of error the defendant points to an incident first made known to the court when his motion for new trial was argued. After court had recessed for the second day, Mr. O'Hara, the defendant's counsel, and one of the jurors, Mr. Richey by name (who later served as foreman), were riding in the courthouse elevator when a group of assistant district attorneys got on and Mr. Savin, one of their number, said in a frivolous way: "Mr. O'Hara, are you defending another guilty client?" O'Hara's affidavit asserts the remark was made in a loud manner and the juror could not help hearing it.

There is nothing in the record to show that the jocular remark, while it may have been indiscreet, resulted in prejudice to the defendant. We find nothing to indicate that any attempt was made to subpoena or to procure an affidavit from the juror, and the record is entirely barren of any showing that the remark was even overheard by him despite O'Hara's conclusion to the contrary. Furthermore, there is no indication of any kind that Mr. Richey knew that Mr. Savin was an assistant district attorney. The rule is well established that before the granting of a new trial is required, the error alleged must appear to have prejudiced the substantial rights of the accused. (*State v. Miller,* 204 Kan. 46, 48, 460 P. 2d 564; *State v. Whiters,* 206 Kan. 770, 773, 481 P. 2d 992.) It is the appellant's burden on appeal not only to show error affirmatively,

but further to establish that the error alleged resulted in substantial prejudice to his rights. (*State v. Griffin*, 210 Kan. 729, 731, 504 P. 2d 150.) This the defendant has not done in this case.

We think it important to note that no motion was made for a mistrial when the elevator incident occurred. That occurrence took place before trial proceedings were concluded and it should have been made known to the judge when court reconvened the following morning, in time for the judge to have inquired into the matter at that point for possible corrective action. Instead, counsel chose to withhold the information until he presented a motion for new trial. We do not consider this a timely disclosure.

The third point raised by Mr. Freeman is the overruling of his motion for discharge entered at the close of the state's case. In rejecting the defendant's motion, the trial court observed: "Taken in its best light, the State has presented a prima facie case." We agree with that appraisal.

Despite discrepancies as to the defendant's dress at the time of the robbery, both Hartke and Fitch identified him as one of the robbers, one by his facial appearance, the other by voice. Both witnesses positively identified Freeman at the trial itself as well as having done so previously at a line-up concerning which no challenge is directed. Hartke's identification of his wrist watch found on Freeman was also positive.

The defendant points out he was apprehended some 45 minutes after the robbery, at a point some twenty-four or twenty-five blocks removed from the scene of the crime, and he asserts it is difficult to understand how he could have gotten so far on foot. We think it not unusual for a grown man to travel two miles in three-quarters of an hour by "shanks' mare." At best the defendant's argument on this point is one for presentation to a jury, not to an appellate court.

Mr. Freeman suggests other matters which he says tend to weaken or to contradict the state's case, including evidence relating to his defense of alibi which was supported by his sister's testimony as well as his own. Further discussion however would seem to be fruitless. The jury was the trier of facts, not this court. The jury heard the testimony on both sides of the case and the responsibility of weighing the evidence rested with it, not with this court. We are satisfied there was sufficient evidence to form the basis for a

reasonable inference of guilt. (*State v. Austin,* 209 Kan. 4, 495 P. 2d 960; *State v. Burgess,* 205 Kan. 224, 468 P. 2d 229; *State v. Phippen,* supra.)

The judgment is affirmed.

FROMME, J., not participating