No. 48,221

STATE OF KANSAS, *Appellee,* v. MAUDRY AMBLER, *Appellant.*

(552 P. 2d 896)

Opinion filed July 23, 1976.

*W. J. Fitzpatrick,* of Independence, argued the cause and was on the brief for appellant.

*David L. Thompson,* county attorney, argued the cause, and *Curt T. Schneider,* attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

FATZER, C. J.: This is an appeal from a conviction by jury trial of the crime of theft of property of the value of $50 or more (K. S. A. 39-720 and K. S. A. 21-3701).

The offense proscribed by these statutes is commonly referred to as welfare fraud. K. S. A. 39-720 provides in pertinent part:

"Any person who obtains or attempts to obtain, or aids or abets any other person to obtain, by means of a willfully false statement or representation, or by impersonation, collusion, or other fraudulent device, assistance to which the applicant or client is not entitled, shall be guilty of the crime of theft, as defined by K. S. A. 1972 Supp. 21-3701; and he shall be required to remit to the secretary the amount of any assistance given him under such fraudulent act. . . ."

K. S. A. 21-3701 provides in pertinent part:

"Theft is any of the following acts done with intent to deprive the owner permanently of the possession, use or benefit of his property:

"(a) Obtaining or exerting unauthorized control over property; or

"(b) Obtaining by deception control over property . . .

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"Theft of property of the value of fifty dollars ($50) or more is a class D

felony. Theft of property of the value of less than fifty dollars ($50) is a class A misdemeanor."

The information charged the defendant, Maudry Ambler, with willfully failing to report income she received from social security during the period of February 1, 1973, through July 1, 1974. This willful false statement was said to have resulted in an overpayment of approximately $900 in Aid to Dependent Children (ADC) payments from the Department of Social and Rehabilitation Services (SRS).

The evidence showed that the defendant had four minor children and had received ADC payments since 1970. About one month after the ADC payments started, the defendant's oldest son began receiving social security payments as the result of his father's death. These social security payments continued throughout the period of the offense.

The amount of ADC payments depends upon household income —i. e., earned income and household resources. ADC recipients are required to submit monthly and semiannual reports on household resources to SRS on forms which are provided. The defendant prepared and submitted all required forms. On each, she listed her current job or jobs and the amount of her wages. On none of the forms did she report the social security payments she received for her son.

That a member of the defendant's household was receiving social security payments first came to light in July of 1974 in a discussion an SRS income maintenance worker had with the defendant. In examining other possible sources of income for the defendant's household in order to reduce the amount SRS had to pay, the worker asked the defendant about the possibility of her getting social security payments. The defendant first said she was not sure she would be able to get such payments. As the discussion continued, she indicated she had recently started receiving a small social security payment of about $5 a month. Upon further questioning, she said her payments had gone up a little in July to maybe $70 a month.

The income maintenance worker checked with the local Social Security Office and learned the defendant had received social security benefits on behalf of her son continuously since January, 1971. At the time of the worker's conversation with the defendant in July, 1974, her monthly social security payments were $102.90.

The defendant gave two reasons for not reporting the social security payments. She told the income maintenance worker she

was acting on the advice of some attorney. However, she did not give the attorney's name nor did she have the attorney contact the worker as requested. At trial, her stated reason for not reporting the social security payments was that the report forms did not require it.

Various mandatory report forms the defendant had filled out were admitted into evidence. Each of the forms had a section for reporting "income." On each form, this section was divided into subsections of "earnings" and "other income." On one form, the following language prefaced the two subsections: "Report below all income received by persons in the household whose needs are included in your assistance." Another form used this prefatory language: "Do you or anyone included in your assistance payment have any income?" On each form, social security was enumerated as one of several sources of "other income." Some of the forms also included a space for the name of the person in the household who was receiving social security payments.

After deliberating four hours, the jury rendered a verdict of guilty of theft. The defendant was sentenced to one to ten years and was subsequently placed on probation for two years. One of the conditions of parole was that she make restitution to the Montgomery County SRS, and pay the costs of this action.

The appellant raises three points on appeal. She first asserts that K. S. A. 39-720 is unconstitutionally vague.

It does not appear from the record that the constitutional ground for reversal of the judgment was asserted below; therefore, it is not properly before this court on appeal. (*State v. Estes,* 216 Kan. 382, 532 P. 2d 1283.)

The appellant next contends the state's evidence failed to establish any legal requirement that she report to the welfare department the social security payments received by her for her son. We disagree.

The evidence showed that the income a welfare recipient receives, whether from earnings or from other sources, affects the amount of the ADC payments. The monthly and semiannual reports on household income are required for this reason. The report forms clearly indicate that income received by any person in the household whose needs are included in the ADC payment is to be reported. There is no dispute that defendant's son was a person whose needs were included in figuring her ADC payments, or that

each of the forms had a place to report social security payments received by a household member.

The appellant's final contention is that it was reversible error for the district court to permit the state to introduce evidence indicating her son was illegitimate. She asserts such evidence was completely irrelevant, prejudicial and deprived her of a fair trial.

The offending comments came in the testimony of the two state's witnesses—the SRS income maintenance worker and the Social Security Office district manager.

The income maintenance worker's testimony revealed how he stumbled onto the fact defendant was receiving social security payments when he was attempting to help her find other sources of support—among them social security. His testimony, as discussed above, was highly important to the state's case. It indicated defendant's reluctance to disclose the social security payments she was receiving.

During the course of his testimony, the worker said: ". . . I asked her if, to her knowledge, had [her son's] father ever admitted paternity to anyone, whereby the evidence would exist then by his admissions that would entitle her to collect social security benefits on the deceased father." Appellant's objection and motion to strike were overruled.

In his testimony about the social security payments received by the defendant, the Social Security Office district manager explained the reason for the large lump sum payment in July, 1973, and the substantially higher monthly payments thereafter by stating: ". . . In June of 1973, the Supreme Court ruled that illegitimate children would receive the same benefits as legitimate children, and the Supreme Court decreed that we should immediately recompute all past benefits where there would not be discrimination between an illegitimate child and a legitimate child. . . ." The appellant lodged no objection or motion to strike this testimony.

Technical errors and irregularities which do not prejudicially affect the substantial rights of the complaining party are to be disregarded on appeal. (*State v. Troy,* 215 Kan. 369, 524 P. 2d 1121.) It is appellant's burden on appeal to show affirmatively that error was committed, *and* to establish that the error prejudiced the substantial rights of the accused. (*State v. Freeman,* 216 Kan. 653, 533 P. 2d 1236.) Speculation as to the possibility of prejudice is insufficient to reverse a conviction. (*State v. Estes,* supra.)

The question of the legitimacy of defendant's son was not highly relevant to the facts to be proved. The rendition of how defendant's failure to report the social security payments was discovered, and the testimony about the amount of the social security payments received could well have been given with no reference to the father's admitted paternity. But admission of irrelevant evidence does not automatically dictate reversal and a new trial. A defendant is entitled to a fair trial, not a perfect one. Only where the erroneous admission of evidence is of such a nature to affect the outcome of the trial so as to amount to a denial of substantial justice is reversal required. (*State v. Bly*, 215 Kan. 168, 523 P. 2d 397.)

While the evidence complained of may have been irrelevant, we cannot say that it is affirmatively shown to have substantially prejudiced the defendant's rights, especially in view of the other evidence and the fact defendant chose to testify that all her children were illegitimate. The provisions of K. S. A. 60-261 enjoin courts to disregard those errors which do not affect the substantial rights of the parties. We are of the opinion the errors committed in this case fall within this category.

Appellant's reliance on *State v. Darling*, 208 Kan. 469, 493 P. 2d 216, is misplaced. That case deals with evidence of sexual immorality as it relates to impeaching a witness on cross-examination.

The judgment is affirmed.