No. 53,086

STATE OF KANSAS, *Appellee,* v. LOUIS J. REYNOLDS, *Appellant.*

(639 P.2d 461)

Opinion filed January 15, 1982.

*Carla L. Roberts,* of Wichita, argued the cause and was on the brief for the appellant.

*Jack Peggs,* assistant district attorney, argued the cause, and *Robert T. Stephan,* attorney general, *Clark V. Owens,* district attorney, and *Cris Senseman,* assistant district attorney, were on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, C. J.: This is an appeal in a criminal action from a jury verdict finding Louis J. Reynolds (defendant-appellant) guilty of aggravated robbery (K.S.A. 21-3427).

In the early morning hours of July 22, 1980, a Kwik Shop on West 13th Street in Wichita, Kansas, was robbed by two black men, one of whom was armed with a gun. Defendant and Pearlie J. Moore were subsequently charged with aggravated robbery. Defendant's first trial on this charge resulted in a hung jury. On retrial the jury convicted him of aggravated robbery. Moore was convicted of aggravated robbery in the first trial and his conviction was affirmed by this court in *State v. Moore*, 230 Kan. 495, 639 P.2d 458 (1982).

The facts in the case are not complex. Rod Pauls, the Kwik Shop employee on duty the morning of the robbery, testified that at 12:30 a.m. he saw two black men walk past the store in the direction of a pay phone. Pauls, however, was unable to positively identify the two men. Some fifteen minutes later, Pauls was at the cash register when someone poked him in the back to get his attention. He turned around to see a man with a gun, later identified as Pearlie J. Moore, near the counter and another man standing some twelve to fifteen feet nearer the door. The men fled with approximately $130 in cash from the register. Two or three days later, Pauls identified Moore and the defendant Reynolds in a photo display. He also later identified Reynolds in court as the man who stood nearer the door during the robbery.

In an unrelated incident at 3 a.m. on the morning of July 23, 1980, the defendant and Moore were stopped by Wichita Police Officer Richard Mouser. While on routine patrol, Mouser saw one occupant of a white-over-blue Cadillac approach the attendant's window at a service station. The man then ran back to the car which sped off the driveway without headlights on. Mouser effected a stop, questioned the driver, Pearlie J. Moore, and conducted a search of the car which revealed a hat and shoes similar to ones described in the Kwik Shop robbery as well as a weapon and shells. In the meantime, a back-up officer, Don Meyer, arrived on the scene and questioned the passenger who identified himself as Richard Grey. After discrepancies in age, birth date, and social security number were revealed, the passenger identified himself as Louis J. Reynolds.

At trial, Reynolds admitted being with Moore on the morning of the 23rd but denied being with him in the early morning hours of the 22nd. Reynolds testified he was at home with his family at

the time in question. The defendant's mother testified he had recently undergone surgery and was home recuperating. It is undisputed the defendant had a hemorrhoidectomy on July 8, 1980, but it is also undisputed he was last seen as an outpatient on July 14.

The jury found the defendant guilty of aggravated robbery. The defendant's motion for a new trial was overruled, and he duly perfected this appeal, alleging numerous trial errors.

The defendant alleges the refusal of the court to grant an order authorizing the services of an expert on the issue of eyewitness identification violated his due process rights under the United States Constitution and Section 10 of the Kansas Bill of Rights because such services were essential to enable the indigent defendant to prepare his defense adequately.

In *Smith v. Baldi,* 344 U.S. 561, 97 L.Ed. 549, 73 S.Ct. 391 (1953), the United States Supreme Court held a state has no constitutional duty to provide technical pretrial assistance. This court recently considered expert witness testimony on the subject of eyewitness identification as opposed to a cautionary instruction to the jury on evaluation of eyewitness testimony and found the cautionary instruction, along with cross-examination and defense advocacy, would adequately protect the defendant. *State v. Warren,* 230 Kan. 385, 635 P.2d 1236 (1981). Under *Warren,* expert testimony on the subject of eyewitness identification is not admissible.

Because the case at bar arose before *State v. Warren* and because the defendant did not request a cautionary instruction on eyewitness identification, we will further examine the merits of admitting the testimony under the circumstances of this case. Assuming *arguendo* the expert testimony would have assisted the jury and would have been otherwise admissible under K.S.A. 60-456(*b*), the indigent defendant must also obtain a favorable ruling under K.S.A. 22-4508, which provides in pertinent part:

"Counsel for a defendant who is financially unable to obtain investigative, expert or other services necessary to an adequate defense in his case may request them in an *ex parte* application addressed to the magistrate or court where the action is pending. Upon finding, after appropriate inquiry in an *ex parte* proceeding, that the services are necessary and that the defendant is financially unable to obtain them, the magistrate or court shall authorize counsel to obtain the services on behalf of the defendant."

The authorization of supporting services in the criminal trial of

an indigent defendant is a matter which lies within the sound discretion of the trial court whose decision to deny services will not be disturbed unless the defendant shows prejudice to his substantial rights resulting from abuse in the exercise of discretion. *State v. Burnett,* 222 Kan. 162, 164-65, 563 P.2d 451 (1977); *State v. Frames,* 213 Kan. 113, 118, 515 P.2d 751 (1973); *State v. King,* 2 Kan. App. 2d 503, 504, 582 P.2d 309 (1978).

In his brief, the defendant stresses the fact this was a cross-racial identification by a witness who was under stress at the time of the brief encounter. While these are important factors bearing on the witness's identification, they are fully capable of being elicited, and in fact were elicited, during other testimony. Accordingly, we find no abuse of discretion in the trial court's refusal to authorize the services of an expert on eyewitness identification. The record in this case discloses no formal motion requesting expert services.

The defendant next contends the admission into evidence of a photo identification session violated his due process and other constitutional rights under the United States Constitution, citing *Simmons v. United States,* 390 U.S. 377, 19 L.Ed.2d 1247, 88 S.Ct. 967 (1968); *Mason v. United States,* 414 F.2d 1176 (D.C. Cir. 1969); *State v. Ponds,* 227 Kan. 627, 608 P.2d 946 (1980). Two to three days after the robbery, a police officer showed Ron Pauls, the Kwik Shop employee, six photos; among them were mugshots of the defendant and Pearlie Moore. Pauls identified both of them as well as making a later positive in-court identification of defendant Reynolds.

In the mugshots of six black males, Reynolds admittedly was the only one wearing a hat, and, although the photograph was taken a year before the incident in question, he was clad in clothing remarkably similar to that Pauls described the robber as wearing. We note, however, that the State did not attempt to introduce the results of this photo session into evidence, nor did the State make reference to the results. Mention of the photographs was first made during the defendant's cross-examination of Rod Pauls and pursued further on direct examination of the police officer who conducted the photo session. During this direct examination, the *defense* introduced the photo array into evidence.

This court has often held a litigant may not invite error and

then complain of that error on appeal. *State v. Phippen,* 208 Kan. 962, 494 P.2d 1137 (1972), is particularly persuasive. In that case, a defendant convicted of robbery complained on appeal of the difference in ages of the women in a lineup. It appeared from the record the defendant and her counsel had agreed they wanted evidence of the lineup introduced. The court held:

"Appellant not only waived objection to the lineup evidence, she expressly requested its admission as a matter of trial strategy. It is fundamental that a litigant who invites and leads a trial court into error will not be heard on appeal to complain of that action [citation omitted]." 208 Kan. at 966.

If there were error, defendant invited it by introducing the photographs into evidence himself and cannot now be heard to complain. The defendant makes no attack on the in-court identification.

The defendant next alleges trial court error in admitting into evidence a weapon allegedly used in the robbery because its prejudicial effect outweighed its probative value.

In the early morning hours of July 23, the day after the robbery, a police officer on routine patrol stopped a Cadillac driven by Pearlie Moore in which the defendant was a passenger. During a consensual search of the car, the officer found a gun which was admitted into evidence at the defendant's trial over his objection. This gun was not specifically identified as the robbery weapon.

The admissibility of evidence is governed by its relevancy to the issue in question. *State v. Baker,* 219 Kan. 854, Syl. ¶ 1, 549 P.2d 911 (1976). "Evidence is relevant if it renders the desired inference more probable than it would be without the evidence, or if it has any tendency in reason to prove any material fact." *State v. Baker,* 219 Kan. 854, Syl. ¶ 2. Under K.S.A. 60-445, however, the trial judge does have discretion to exclude evidence if its probative value is outweighed by unfair and harmful surprise. There is no evidence the defendant was surprised by admission of this evidence. He knew the police discovered the gun in the car in which he was riding, and he knew use of a deadly weapon was an element of aggravated robbery, the crime with which he was charged.

Of necessity, the trial judge has discretion to exclude evidence when its probative value is outweighed by its prejudicial effect on the jury. *State v. Davis,* 213 Kan. 54, 57, 515 P.2d 802 (1973). Gard's Kansas C. Civ. Proc. 2d § 60-445 (1979). See Comment at

166-168. In the instant case, the circumstances surrounding the defendant's arrest have considerable probative value. In the early morning hours of July 23, some 24 hours after a robbery, the defendant was cruising the streets in a car which contained a gun and was driven by a man later convicted of that robbery.

We find the weapon properly admitted into evidence with the weight and effect to be given it a concern properly within the province of the jury. *State v. Nicholson,* 225 Kan. 418, 420, 590 P.2d 1069 (1979).

The defendant also contends hearsay testimony of Pearlie Moore's consent to search the Cadillac on July 23 violated his, defendant's, due process rights and the right to confront witnesses against him. On direct examination, the arresting officer testified over objection to the circumstances of the search which produced the gun:

"Mr. Moore did at that time sign a waiver of search form which allowed myself and the lab detective to search the vehicle that he was driving. He did sign the form, read it and did state that he understood it."

Pearlie Moore did not testify at trial and so was unavailable for cross-examination.

We do not believe the statement to be inadmissible hearsay because it was not offered to prove the truth of the matter asserted. *State v. Hollaway,* 214 Kan. 636, 639, 522 P.2d 364 (1974). No reliance is placed on the truth of the statement. The mere uttering of the words has an independent legal significance to indicate consent to the search. Under these circumstances, the statement is admissible when testified to by a person who heard it. *State v. Oliphant,* 210 Kan. 451, 454, 502 P.2d 626 (1972).

Cases cited by appellant in which the confession of an accomplice has been introduced into evidence without opportunity for cross-examination are readily distinguishable. *Bruton v. United States,* 391 U.S. 123, 20 L.Ed.2d 476, 88 S.Ct. 1620 (1968); *Douglas v. Alabama,* 380 U.S. 415, 13 L.Ed.2d 934, 85 S.Ct. 1074 (1965); *State v. Sullivan & Sullivan,* 224 Kan. 110, 578 P.2d 1108 (1978). In the case at bar, there was no out-of-court confession implicating the defendant in the crime charged, tending to disprove any theory of the defense, or bolstering any damaging evidence introduced by the State. Also distinguishable is the case in which an undercover agent repeats a conversation which directly implicates the defendant in criminal activity. *State v. Collazo,* 1 Kan. App. 2d 654, 574 P.2d 214 (1977).

The defendant next contends K.S.A. 1980 Supp. 21-3702(1)(a), which establishes a statutory presumption of intent to permanently deprive an owner of property by use of false identification, violates the due process clause of the United States Constitution. This issue is not properly before the court.

The defendant apparently bases his claim on the back-up officer's testimony that at the time of his arrest defendant Reynolds gave a false name and conflicting social security numbers. No contemporaneous objection was made to this testimony. Further search of the records reveals *no instruction* based on K.S.A. 1980 Supp. 21-3702(1)(a). Nor would such an instruction have been proper. K.S.A. 1980 Supp. 21-3702 clearly provides that it applies to "any prosecution under *this* article," Article 37. The defendant was charged with aggravated robbery under Article 34 of Chapter 21.

The defendant asserts trial court error in failure to give a jury instruction on lesser included offenses. He does not, however, specify the instruction which should have been given. While it is true that under K.S.A. 21-3107(3) the trial court has an affirmative duty to instruct on lesser crimes "of which the accused might be found guilty under the information or indictment and upon the evidence adduced," that duty arises only where there is evidence under which the defendant might reasonably be convicted of a lesser crime. See, *e.g., State v. Prince,* 227 Kan. 137, 140, 605 P.2d 563 (1980).

"The test for the giving of a lesser included instruction is not whether any theory arises under which a person could be found guilty or innocent, but whether there is sufficient evidence to support the giving of an instruction on the lesser charge."

As the State's evidence developed, the defendant stood as lookout at the door while Pearlie Moore pointed the gun at Rod Pauls and got the money. This court has often held that one who intentionally aids or advises in the commission of a crime may also be found guilty of that crime. *State v. McDaniel & Owens,* 228 Kan. 172, 178, 612 P.2d 1231 (1980); *State v. Goering,* 225 Kan. 755, 757-58, 594 P.2d 194 (1979); *State v. Sullivan & Sullivan,* 224 Kan. at 119. There was no dispute that a gun was used in the robbery. Rather, the defendant relied on a defense of alibi, narrowing the issue at trial to one of identity. The jury could have convicted him of aggravated robbery or acquitted him.

There was no evidence to support another verdict. The defendant's contention is without merit.

We turn next to the defendant's contention the evidence was not sufficient to prove beyond a reasonable doubt that he committed the crime. On appeal the standard of review is whether the appellate court, viewing the evidence in the light most favorable to the prosecution, is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. See, *e.g., State v. Peoples,* 227 Kan. 127, Syl. ¶ 2, 605 P.2d 135 (1980). "[T]his court looks only to the evidence in favor of the verdict, it does not weigh the evidence, and if the essential elements of the charge are sustained by any competent evidence the conviction stands." *State v. Racey,* 225 Kan. 404, Syl. ¶ 3, 590 P.2d 1064 (1979). In the instant action, Rod Pauls, the Kwik Shop employee on duty at the time of the robbery, made a positive in-court identification of the defendant as the man who aided and advised by acting as lookout while Moore, armed with a deadly weapon, intentionally took property from Pauls by threat of bodily harm. Pauls further testified the above took place in Sedgwick County, Kansas. We find the essential elements of the charge sustained by competent evidence.

It is also argued the court erred in overruling a motion for a new trial. In that motion, the defendant raised three grounds for new trial: (1) Error in not authorizing expert services on eyewitness identification, (2) sufficiency of the evidence, and (3) error in admitting the weapon into evidence. A new trial may be granted in the interest of justice, but such grant lies within the sound discretion of the trial court. *State v. Parker,* 213 Kan. 229, 233, 516 P.2d 153 (1973). We have examined each of the three grounds asserted and find no abuse of discretion in failure to grant a new trial.

Finally, the defendant contends the sentence imposed constitutes cruel and unusual punishment. The defendant was convicted of the class B felony of aggravated robbery with a firearm and sentenced to serve not less than five nor more than twenty years, the minimum term within the applicable statutory provision. K.S.A. 1980 Supp. 21-4501(*b*). The defendant contends his limited culpability in the present case and his prior record of only one misdemeanor marijuana conviction warrant consideration in imposition of sentence. This court has recently considered the

issue of cruel and unusual punishment, harmonizing Kansas law with United States Supreme Court decisions. See *State v. McDaniel & Owens,* 228 Kan. at 181-85. Among other principles, the court reiterated that a sentence fixed within the bounds of the statute is not erroneous absent a showing of abuse of judicial discretion. 228 Kan. at 183. In a case decided the same term, the court held criteria "to be considered in determining what is cruel or unusual punishment as to the length of a sentence include excessiveness, disproportionality, lack of necessity, unacceptability to society, and arbitrariness of infliction." *State v. Weigel,* 228 Kan. 194, 203, 612 P.2d 636 (1980). The record in this case reveals the court had all pertinent mitigating factors before it at the time it considered and denied probation as well as at the time sentence was passed. The court specifically considered the use of a weapon as a factor in determining the length of the sentence. We find no abuse of discretion in that determination.

The judgment of the lower court is affirmed.