. No. 67,012

STATE OF KANSAS, *Appellee*, v. SCOTT A. BLACKBURN, *Appellant*.

(840 P.2d 497)

Opinion filed October 30, 1992.

*Steven R. Zinn*, assistant appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, and *Elizabeth Sterns*, assistant appellate defender, were on the brief for appellant.

*Thomas J. Bath*, assistant district attorney, argued the cause, and *Paul J. Morrison*, district attorney, and *Robert T. Stephan*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

SIX, J.: Scott A. Blackburn appeals his convictions of aggravated kidnapping, kidnapping, and rape.

Blackburn raises three issues: (1) the propriety of the admission of Blackburn's prior convictions on cross-examination under K.S.A. 60-447; (2) the sufficiency of the evidence of aggravated kidnapping and kidnapping; and (3) whether his convictions of aggravated kidnapping and rape are multiplicitous.

Our jurisdiction is under K.S.A. 1991 Supp. 22-3601(b)(1) (an appeal from a conviction of a class A felony).

In affirming, we review the prior conviction issue by applying the abuse of discretion standard, see *State v. Martin,* 237 Kan. 285, Syl. ¶ 1, 699 P.2d 486 (1985), and the harmless error rule, see *State v. Freeman,* 216 Kan. 653, 656-57, 533 P.2d 1236 (1975). The standard of review when the sufficiency of evidence is challenged is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, we are convinced that a rational factfinder could have found Blackburn guilty beyond a reasonable doubt. *State v. Zimmerman,* 251 Kan. 54, Syl. ¶ 1, 833 P.2d 925 (1992).

## Facts

The testimony is uncontroverted that in June 1990, in Independence, Missouri, S.M., a 21-year-old woman, voluntarily accepted Blackburn's offer for her and her four-year-old daughter, A.B., to ride in his pickup. The testimony differs as to what occurred after S.M. and A.B. entered the pickup.

## S.M.'s Testimony

On the evening in question, S.M. and A.B. were "kicked out" of a car by S.M.'s boyfriend. After accepting the ride from Blackburn, S.M. requested that he drive her to her apartment. Blackburn did not exit the interstate highway at the ramp pointed out by S.M. He drove into a field and stopped the vehicle in order to urinate. S.M. was worried and considered leaving, but concluded the interstate was too far away for her to succeed in escaping.

After re-entering the interstate Blackburn reached over and grabbed S.M.'s breast. S.M. told him to stop. He did not. Blackburn yelled at her to take her shirt off. S.M. asked Blackburn to let her and A.B. go. The request was ignored. Blackburn related to S.M. that he had always fantasized about having sex with a hitchhiker. He exposed himself and began to masturbate. He later grabbed S.M.'s hair and pulled her head toward his lap. S.M. began to scream and then to cry. A.B. woke up. S.M. struggled with Blackburn and begged him to stop. He stated that he would let them go if she did what he told her to do. Blackburn then forced S.M. to engage in oral sex. S.M. was afraid that Blackburn would either kill or rape her or A.B. if she did not perform as requested. These incidents occurred in Missouri.

Blackburn continued to drive west on the interstate and eventually crossed into Kansas. He then drove the pickup off on the side of the road, telling S.M. to remove her pants. S.M. continued to resist and to request that he release them. Blackburn became violent. S.M. attempted to calm him. Blackburn pulled back onto the interstate and told S.M. that if she did not remove her pants by the time he stopped again, he would kill her. A.B. was awake and crying.

Subsequently, while on the shoulder of the interstate, Blackburn forced S.M. to have intercourse with him. During intercourse, Blackburn inquired, "How do you like getting fucked in your daughter's lap?" He put his hands around S.M.'s throat and commenced to strangle her. While freeing herself, S.M. bit Blackburn on his nose. She opened the pickup door, grabbed her daughter, and ran toward oncoming traffic. S.M. flagged down a motorist.

S.M.'s identification card, as well as bows and ribbons with which A.B. had been playing, were found in the ditch at the rape location. Prior to trial, S.M. and A.B. identified Blackburn from a photo lineup.

## Blackburn's Testimony

Blackburn was driving in Independence, Missouri, in June 1990. S.M. and A.B. stepped in front of his pickup when he was not looking. Blackburn slammed on the brakes, apologized, and asked if they needed a ride. S.M. accepted.

Blackburn asked S.M. where she was headed and why she and A.B. were walking. After S.M. told Blackburn the direction of her home, she explained they had been walking because her boyfriend had thrown her out of the car. Blackburn missed the interstate exit because he was distracted by conversation and was attempting to reach for a beer. He turned off at the next exit and stopped to relieve himself.

After Blackburn drove the pickup back onto the interstate going the opposite direction, S.M. asked Blackburn if he would stop somewhere so that she could use the telephone. He then inquired whether she had to go straight home. She did not tell him to turn off when they reached her exit. Blackburn spoke with S.M. about his fight with his ex-wife, with whom he still lived. He

told S.M. that things would be better with her boyfriend and gave her a comforting pat near her shoulder or breast. He touched her on her leg and asked if he could kiss her. S.M. did not answer, but when he pulled the pickup over and kissed her, she kissed him back. S.M. then consented to have sexual intercourse. During intercourse, Blackburn asked S.M. how she liked having intercourse in her daughter's lap. S.M. became angry and told Blackburn to stop. When he did not, she bit him on the nose. He retaliated by grabbing her hair and then her throat. A.B. woke up crying. Blackburn then realized he was choking S.M. He let go of S.M., opened the passenger door, pushed them out, and drove off.

## Additional Trial Evidence

The State introduced into evidence a photo of Blackburn taken the morning after his arrest. S.M. testified that the photo showed where she bit Blackburn on his nose. A photo of S.M., depicting the strangulation marks on her neck, was also introduced. A.B. testified that bad things had happened when her mother accepted a ride with Blackburn. A.B. said that her mother had cried in Blackburn's lap and that Blackburn had said everything would be okay. The first police officer to talk with S.M. and A.B. testified that A.B. told him a man had grabbed her mother's hair and hurt her mother.

## Character Evidence, K.S.A. 60-447

Blackburn asserts error in the trial court's allowing the State to introduce evidence of his prior convictions as character evidence contrary to a previous ruling granting Blackburn's motion in limine. Blackburn reasons that the prior convictions had no relevancy or probative value in relation to the statements he made about his "moral character" during direct examination.

The purpose of K.S.A. 60-447, in combination with K.S.A. 60-421, is to permit a defendant to testify in his or her own behalf without having a history of past misconduct paraded before the jury. *State v. Stokes,* 215 Kan. 5, 7, 523 P.2d 364 (1974).

K.S.A. 60-447 provides:

"Subject to K.S.A. 60-448 when a trait of a person's character is relevant as tending to prove conduct on a specified occasion, such trait may be proved in the same manner as provided by K.S.A. 60-446, except that (a)

evidence of specific instances of conduct other than evidence of conviction of a crime which tends to prove the trait to be bad shall be inadmissible, and (b) in a criminal action evidence of a trait of an accused's character as tending to prove guilt or innocence of the offense charged, (i) may not be excluded by the judge under K.S.A. 60-445 if offered by the accused to prove innocence, and (ii) *if offered by the prosecution to prove guilt, may be admitted only after the accused has introduced evidence of his or her good character.*" (Emphasis added.)

Blackburn was asked, during direct examination, how he felt about grabbing S.M. around the throat. He responded:

"A. Pretty shitty.

"Q. Why?

"A. Because I've probably broken everything moral that I've ever—I just ain't like that.

"Q. What do you mean by that?

"A. I'm human. I consider myself a gentleman, and I didn't—no matter what—I shouldn't have been there with her and her daughter. I shouldn't have been with her at all. I should have been home with [my ex-wife]."

At the conclusion of Blackburn's direct testimony, the prosecutor approached the bench and commented:

"Judge, it is the State's position that the defendant's testimony in the last couple minutes has put his character in issue, . . . he said he felt bad because it broke every moral code he has. . . . I think it is clear that he has opened up his character at this point."

The trial judge agreed, stating:

"Well, my recollection was that his testimony was that he had 'broken every moral code that I have. I just ain't like that.' And it sure sounded to me like he was vouching for his own integrity and good character when he did that. I think you've opened the door, and I'm going to let [the prosecutor] walk through it."

Blackburn objected to the ruling of the trial court.

On cross-examination, the State inquired:

"Q. A few minutes ago you spoke about the fact that this incident broke every moral code that you believe in. Is that what your testimony was?

"A. Yes."

The prosecutor then asked Blackburn if he had prior convictions for an assault, for driving while under the influence (DUI), and for disturbing the peace. Blackburn's prior convictions also were mentioned in redirect examination and in recross-examination.

Blackburn concedes he "opened the door" by introducing evidence of his moral character. He contends, however, the character trait he introduced was his conduct and beliefs with regard to women and children. Blackburn emphasizes that he qualified the scope of his own character assessment on direct examination. Blackburn asserts that the prior crimes should not have been admitted because they were misdemeanors and did not involve women or children. He reasons that the prior crimes had no relevance or probative value to his moral character or to his propensity to commit the crimes in the case at bar. We disagree. "Crimes," by statutory classification, include both felonies and misdemeanors. K.S.A. 21-3105.

The prior crimes evidence of assault and disturbing the peace were relevant. Blackburn's initial statement about his character was not qualified. Blackburn's response related to the question of how he felt about grabbing S.M. around the throat. K.S.A. 60-447 allows admission of evidence of character traits if an "accused has introduced evidence of his or her good character." Blackburn's testimony referring to being a gentleman and to his own moral code, he concedes, "opened the door" and put his character at issue.

Blackburn, by introducing evidence of his good character, foregoes the protection offered in K.S.A. 60-447. *State v. Hall*, 246 Kan. 728, Syl. ¶ 4, 793 P.2d 737 (1990). (We reasoned that Hall's attempt to characterize himself as "a good Kansas farm boy, a family man, and a successful rancher" went beyond basic biographical information. Accordingly, Hall placed his character in issue. 246 Kan. at 743.)

Blackburn stresses that the trial court allowed the prior conviction evidence contrary to its previous ruling on the motion in limine. In granting the motion in limine, the trial judge commented: "If someone opens a floodgate somewhere along the line and invokes one of the statutory or case law exceptions, we will deal with that if and when it arises." We find no abuse of discretion. Blackburn's prior convictions of assault and of disturbing the peace were admissible under K.S.A. 60-447. Blackburn was also cross-examined concerning a DUI conviction. We question the relevance of a DUI conviction within the context of the instant character evidence scenario; however, any error in admission of

the DUI conviction was harmless. See *State v. Freeman,* 216 Kan. 653, 656-57, 533 P.2d 1236 (1975).

## The Sufficiency of the Evidence
### a. Aggravated Kidnapping

Blackburn contends his aggravated kidnapping conviction is not supported by sufficient evidence. He argues (1) there was no evidence that he took or confined S.M. by force and (2) any taking or confining was incidental to the rape.

The State asserts that it was not limited to proving Blackburn took or confined S.M. by force. Blackburn was charged with taking or confining S.M. by force, threat, *or* deception to facilitate the commission of any crime. The State reasons that S.M. suffered bodily harm. K.S.A. 21-3421. The jury was instructed accordingly. The State maintains there was evidence of force, threat, *and* deception.

The evidence in the case at bar supports the State's claim of a taking or confining by force or threat. S.M. asked Blackburn numerous times to be released. He refused, grabbing her by the hair on occasion. Blackburn stated that if she did as she was told everything would be okay and he would let her and her daughter go.

S.M. and A.B. voluntarily entered Blackburn's pickup upon his offer of a ride. He agreed to take them to S.M.'s apartment; however, he deliberately missed the appropriate exit. Blackburn told S.M. he had fantasized about having sex with a hitchhiker. A jury could surmise that Blackburn had deceived S.M. into believing he would give her a ride home. See *State v. Damewood,* 245 Kan. 676, 687, 783 P.2d 1249 (1989) (taking or confining by deception is "the result of the defendant's knowingly and willfully making a false statement or representation, express or implied, pertaining to a present or past existing fact").

The evidence was sufficient for a jury to find that Blackburn took or confined S.M. by force, threat, or deception.

Blackburn claims that any taking or confining, if present, was incidental to the rape and did not facilitate the rape.

Blackburn asserts that *State v. Cabral,* 228 Kan. 741, 619 P.2d 1163 (1980), governs the case at bar. We reasoned in *Cabral* that under all the factual circumstances, a separate and independent

crime of kidnapping was not established. Cabral and his victim had been together all evening, driving around and stopping at various places by mutual consent. After leaving a park, while on the way to the dormitory where the victim resided, Cabral turned into another park, locked the car door, and raped his victim. 228 Kan. at 742. We concluded that when forcible rape occurs in a vehicle, of necessity, some confinement is a necessary part of the force required in the commission of the rape. 228 Kan. at 744-45.

*State v. Coberly*, 233 Kan. 100, 105-06, 661 P.2d 383 (1983), and *State v. Lile*, 237 Kan. 210, 214, 699 P.2d 456 (1985), upheld separate convictions for rape and kidnapping (the rape victims were confined in the defendants' vehicles). *Cabral* did not control because of factual differences.

The *Coberly* victim accepted a ride because Coberly deceived her into believing he wanted her to babysit. The victim continued to ride after learning of the babysitter fiction because of the lack of an explanation to give to her parents. Coberly (1) repeatedly refused the victim's requests to take her home and (2) physically prevented her from leaving the truck and walking home. He threatened her with a knife before raping her. 233 Kan. at 101, 105.

The evidence presented by the State in *Lile* showed that the victim was forced to remain in Lile's automobile against her will. Lile drove the victim approximately six miles to a country field. The confinement and movement were sufficient to establish the independent crime of aggravated kidnapping. 237 Kan. at 213-14.

Contrary to Blackburn's assertions, *Cabral* is not controlling in the case at bar. Blackburn repeatedly refused S.M.'s requests to let them go. S.M. was not his willing companion for the entire time prior to the rape. He physically prevented her from freeing herself and her daughter. Blackburn (1) terrorized S.M. into partially undressing, (2) threatened to kill her, (3) forced her to perform oral sex, and (4) raped her.

Although Blackburn remained mainly on the interstate, he drove in areas unfamiliar to S.M. A jury could find that the Johnson County, Kansas, location made it easier for Blackburn to commit rape and also lessened his risk of detection.

The evidence is sufficient to support the crime of aggravated kidnapping. The confinement of S.M. was not slight, inconsequential, or incidental to the crime of rape. *State v. Zimmerman,* 251 Kan. 54, 59, 833 P.2d 925 (1992).

## b. The Kidnapping of A.B.

Blackburn argues that his conviction of kidnapping A.B. is not supported by sufficient evidence. He was charged with taking or confining A.B. by force, threat, or deception to facilitate the commission of any crime. K.S.A. 21-3420. Blackburn insists there was no evidence from which the jury could find that he took or confined A.B. by force or threat.

Blackburn asserts that A.B.'s presence in his pickup was incidental to her mother's presence, *i.e.,* A.B. entered the vehicle because her mother did and left the vehicle when her mother pushed her out. Blackburn emphasizes that (1) A.B. slept a good share of the time, (2) A.B. never requested or attempted to leave his vehicle, (3) he never threatened A.B. directly, and (4) he never forced A.B. to do anything.

Blackburn fails to take into account that "as a matter of law, a child of tender years may not consent to its seizure." *State v. Zimmer,* 198 Kan. 479, 500, 426 P.2d 267, *cert. denied* 389 U.S. 933 (1967). As a practical matter, under the facts of the case at bar, if S.M. was taken or confined, then so was A.B. A.B., who was four years old, could not remove herself from the adult drama played out in the pickup as it traveled the interstate. The evidence was sufficient for a jury to find that the taking or confining was by threat. Evidence was presented that the taking or confining of A.B. was to facilitate the rape of S.M. A jury reasonably could conclude that S.M. would not have accepted Blackburn's offer of a ride if he had refused to take A.B.

## Multiplicity of Aggravated Kidnapping and Rape Convictions

Blackburn argues that his convictions of aggravated kidnapping and rape are multiplicitous because they involved the same force and bodily harm. He claims "[t]he jury was instructed that the bodily harm necessary to find [him] guilty of aggravated kidnapping was rape."

Blackburn's claim is not correct. The instruction informed the jury that *"bodily harm includes, but is not limited to, the act of*

*rape.*" The jury was *not* required to find that rape was the bodily harm inflicted upon S.M.

Evidence of bodily harm, in addition to rape, was supplied by S.M.'s testimony. *State v. Mason,* 250 Kan. 393, 396-98, 827 P.2d 748 (1992).

In order to find Blackburn guilty of rape, the jury was instructed, in part, that "the act of sexual intercourse was committed without the consent of [S.M.] under circumstances when she was overcome by force or fear." There was evidence of force (the grabbing of her hair and throat) and fear (the threat to kill her).

The evidence introduced to prove aggravated kidnapping and rape did not involve the same force and bodily harm. Aggravated kidnapping and rape do not share the same elements. Each offense requires proof of a fact not required in proving the other.

Blackburn also argues the convictions are multiplicitous because rape is a lesser included offense of aggravated kidnapping. We held in *Wisner v. State,* 216 Kan. 523, Syl. ¶ 3, 532 P.2d 1051 (1975), that rape is not a lesser included offense of aggravated kidnapping.

Blackburn's convictions for aggravated kidnapping and rape are not multiplicitous.

Affirmed.