No. 82,678

STATE OF KANSAS, *Appellee*, v. CHARLES R. ROBBINS, *Appellant*.
(32 P.3d 171)

Opinion
filed September 28, 2001.

*Barry Albin*, of Kansas City, argued the cause and was on the brief for appellant.

*Terra D. Morehead*, assistant district attorney, argued the cause, *Nick Tomasic*, district attorney, and *Carla J. Stovall*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

LARSON, J.: Charles R. Robbins appeals his jury convictions of aggravated burglary, K.S.A. 1991 Supp. 21-3716; aggravated kidnapping, K.S.A. 21-3421 (Ensley 1988); kidnapping, K.S.A. 21-3420 (Ensley 1988); rape, K.S.A. 21-3502 (Ensley 1988); aggravated criminal sodomy, K.S.A. 21-3506 (Ensley 1988); and aggravated robbery, K.S.A. 21-3427 (Ensley 1988). Robbins asserts 10 distinct claims of error.

*Factual background*

The crimes were committed on January 25, 1992, but Robbins was not tried until October 1998, because he fled Kansas and was not located until late 1997 in a Florida prison under an assumed name.

The trial testimony revealed that the victims, Mr. and Mrs. G., knew Robbins and his cousin, Terry Sofranski, through relatives. Sofranski lived in the vicinity of Mr. G.'s cousin and Mrs. G. had met Robbins, whom she knew as "Chuck," on several occasions.

On the evening of the alleged crimes, Mr. and Mrs. G. were in bed in their back bedroom with their small dog sleeping near their feet. A backyard light illuminated the bedroom. Sometime after midnight, Mrs. G. heard footsteps in the house, awoke her husband, and then called out, "[W]ho the hell is in my house?"

Mrs. G. testified she saw two figures appear in the doorway. One asked where her husband was and when she said he was not there, she was told that her husband better show himself or he would "blow" her "fuckin' head off." Mrs. G. recognized the voice as that of "Chuck" (Robbins). Robbins came into the bedroom and duct

taped Mr. G. and then Mrs. G. She testified that she heard Sofranski saying "wrap 'em up, wrap 'em up," but she was aware of only Robbins actually coming into the bedroom.

While Mrs. G. lay face down on the bed with her hands duct taped behind her, Robbins sexually assaulted her; he inserted his penis into Mrs. G.'s anus and he later put his finger in her vagina. She testified she was scared and begged him to please stop because he was hurting her. At some point he turned her over and duct taped her mouth, at which time she saw his face. From his voice and face, she had no doubt that it was Robbins who assaulted her.

The robbers found no money and she heard Sofranski's voice coming from the front room, urging Robbins to leave, which they did shortly thereafter.

Mr. G.'s description of events was consistent with his wife's. He heard Sofranski saying, "[W]rap 'em up." He rolled over closer to the doorway as he was directed and was duct taped by Robbins with his hands behind his back and over his mouth and nose. He heard the man assaulting his wife and her saying, "you're hurting me."

Mr. G. testified that he had no weapons in the house but said he knew from experience what a pump-action shotgun sounded like and that he heard a noise in the kitchen like a shell being loaded in a pump-action shotgun. Mr. G. testified that he did not own a BB gun at the time of the break-in and only acquired one at a later date.

Mr. and Mrs. G. managed to free themselves from the tape. Their dog's mouth and paws had also been taped, and they freed her as well. They discovered their television, VCR, stereo, and telephone were missing from the house. Their car had also been stolen. They dressed quickly and summoned the police.

Police Officer Timothy Hylton testified that on the night of the incident, Mr. G. told him their home had been broken into and his wife had been raped. He said Mr. G. also told him that one of the intruders said he would kill Mrs. G. unless the Gs complied with their orders. Hylton testified that Mrs. G. consistently described what happened and identified the two intruders by name.

The victims told the officer that they believed the weapon held by the intruders was a shotgun.

Mrs. G. received a medical examination where the assisting nurse documented a random pattern of red marks on Mrs. G.'s buttocks and red marks on both of her wrists. The examining doctor found no sperm on a vaginal swab taken for the rape kit, but he testified this was not necessarily inconsistent with what she said occurred.

The victims' car was found later that day, and the television, stereo, and VCR were recovered from a party who had bought the items from Sofranski. The cumulative value of the three items was estimated at trial to be $750, and the purchaser testified that Sofranski had stated he was going to divide the money with Robbins.

Sofranski was arrested shortly after the incident and gave a statement which was used at Robbins' trial. Sofranski was tried in 1992 and was convicted of burglary and theft. At Robbins' trial, Sofranski testified that he had earlier stolen Mrs. G.'s keys and after entry to the house, he told Robbins to go back and make sure the Gs did not come out front while he gathered the items.

Sofranski testified they did not have a weapon, but they found a BB gun in the house which he took and later sold. In an earlier statement to the police, Sofranski had stated he and Robbins had a rifle-type BB gun which he took with him to the back room. Sofranski claimed he did not know what Robbins did in the back room during the time he was gathering items in the living room. In his police statement, however, Sofranski had stated that Robbins said something about taking Mrs. G. into another room and doing what he wanted with her. Sofranski testified that he never saw any duct tape. He said he finally got Robbins to leave with him, and they drove away in the Gs' car.

Robbins testified he went with Sofranski to the Gs' house but assumed they were allowed to be there. He said when he heard a lady yell, Sofranski told him to go in back and keep the people where they were. He claimed to have pulled his sweatshirt up over his face, then stood in the doorway where he saw the Gs in bed and recognized them. He testified he tried to lower his voice when he told them to be quiet. He denied using any duct tape, claimed

that he had no weapons and saw no weapons, and denied sexually assaulting Mrs. G. He testified that he left with the items which were sold. After he was given a part of the money, he left for Arkansas a couple of days later. He claimed to have been drinking and that the alcohol affected his judgment, but he admitted that he knew what he was doing.

Robbins was convicted on all counts except an unlawful possession of a firearm charge. After his post-trial motions were denied, and he was sentenced, he appealed. We have jurisdiction under K.S.A. 22-3601(b)(1).

*Statute of limitations*

Robbins first argues that his prosecution was barred by the 2-year statute of limitations found in K.S.A. 1991 Supp. 21-3106(3). Subparagraph (4) of this statute states that the period within which a prosecution must be commenced does not include any period in which the accused is absent from the State. The offenses were committed on January 25, 1992, and Robbins had left Kansas according to the record by January 29, 1992. He was not located until late 1997. His letter from Florida requesting disposition of his case was filed on May 4, 1998. He was returned to Kansas and arrested on May 19, 1998. His trial commenced October 26, 1998. Out of the roughly 6 years and 5 months which passed between the commission of his offenses and the filing of the fourth amended information, he was out of the State for all but, at most, a month and a half. Based on these facts, the argument that the 2-year statute of limitations bars prosecution is spurious.

*The speedy trial limits of the Interstate Agreement on Detainers*

Robbins next argues the speedy trial limitation of the Interstate Agreement on Detainers found in K.S.A. 22-4401 *et seq.* was violated. The State argues this issue was waived by not being raised until after sentencing, but even if not waived, this claim has no merit.

There are two methods for disposition of charges pending against a prisoner incarcerated in another state under the Interstate Agreement on Detainers. *State v. White*, 234 Kan. 340, 342, 673 P.2d 1106 (1983).

Under the agreement, a detainer is a notice filed with the confining institution that criminal charges are outstanding in another jurisdiction and that the prisoner is wanted in order to stand trial. *State v. Clark*, 222 Kan. 65, 68, 563 P.2d 1028 (1977). Once a detainer is lodged, the authorities having custody of the prisoner must promptly inform the prisoner of the source and contents of the detainer and shall inform him or her of the right to request a final disposition thereof. K.S.A. 22-4401, Art. III (d); 222 Kan. at 67.

If the defendant enters a request for disposition under Article III of the Agreement, then the prisoner must be returned to the jurisdiction where the detainer has been filed and must be tried within 180 days after a written notice and his or her request have been delivered to the prosecuting officer and the appropriate court. K.S.A. 22-4401, Art. III(a); *White*, 234 Kan. at 343; *Clark*, 222 Kan. at 67. The 180 days does not begin to run until the prisoner's request has been received by both the prosecuting officer and the appropriate court in the receiving state. *In re Habeas Corpus Application of Sweat*, 235 Kan. 570, 578-79, 684 P.2d 347 (1984); *White*, 234 Kan. at 344-45. Under Article IV, a prisoner may also be returned pursuant to a request for temporary custody by the state where the charges are pending. If returned pursuant to such a request, then the prisoner must be tried within 120 days of arrival in the receiving state. K.S.A. 22-4401, Art. IV(d); *White*, 234 Kan. at 342-43; *Clark*, 222 Kan. at 67.

Kansas law enforcement did not learn of Robbins' whereabouts until late 1997 when he was discovered incarcerated in Florida under the assumed name of James Zebus. On December 16, 1997, an alias warrant was issued. After being notified of the charges pending, Robbins requested disposition of the charges on April 21, 1998. This request was mailed by registered certified mail by the Florida Department of Corrections on April 27, 1998, and was received by the Clerk of the District Court of Wyandotte County, Kansas, on May 4, 1998. The exact date of Robbins' return to the state of Kansas is unclear from the available record, but it does show that on May 19, 1998, he was arrested, the warrant was returned, and he appeared in court in Kansas.

Assuming for purposes of this appeal that Robbins arrived in Kansas on May 19, 1998, then between his return and his trial, 161 days passed. While Robbins argues 163 days passed, both numbers are more than the 120 days allowed where Article IV applies. However, if Article III applies, then the 180-day speedy trial limit of that article was not violated because, at most, 176 days passed between the date Robbins' request for disposition was received by the proper authorities in Kansas and the date he was brought to trial in Kansas.

Robbins argues that because the State began a request for him to be returned he merely "acceded to their demand" and that this should bring him under the provisions of Article IV. The State more convincingly argues that its procedure was never completed because Robbins chose to file his request bringing into effect the provisions of Article III, including the 180-day limit of that Article.

Robbins' request was mailed before the 30-day waiting period for honoring the State's alleged April 9, 1998, request could have been completed. More importantly, the record indicates he was returned to Kansas, not because of any request by the State but, rather, expressly based upon his own request. This request was referred to in the Florida Department of Corrections letter offering temporary custody to Kansas and was attached to that letter with other necessary forms.

Based on the record, it is clear that Robbins was returned to Kansas pursuant to his Article III request, making the time limits of Article III applicable. His argument that both time limits applied was made and rejected in *White*, 234 Kan. at 342-43. Under the facts of this case, the speedy trial limits of the Agreement on Detainers were not violated and Robbins was timely tried.

### *The amendment of the charges*

In the fourth amended information, two new charges were added, several of the crimes were charged as aggravated, and alternative means of committing some of the crimes were changed and/or added. This is the basis for Robbins also asserting the Interstate Agreement on Detainers was violated by the State trying him on charges that were added or amended after his request for

disposition of his outstanding charges. This is a question of law subject to unlimited review.

In the first place, the agreement of Detainers does not contain any provisions making amendments impermissible. In fact, Article V(d) of the Agreement states:

"The temporary custody referred to in this agreement shall be only for the purpose of permitting prosecution on the charge or charges contained in one or more untried indictments, information or complaints which form the basis of the detainer or detainers *or for prosecution on any other charge or charges arising out of the same transaction.*" (Emphasis added.)

The fact that Sofranski was charged with lesser crimes has no significance although Robbins argues otherwise. The amended and added charges on which Robbins was finally prosecuted clearly arose out of the same transaction as that which gave rise to the first three informations. The State was not precluded by the Interstate Agreement on Detainers from making the amendments.

*The jury instructions for aggravated robbery*

Robbins next asserts the jury instruction on aggravated robbery was clearly erroneous because it did not include a definition of dangerous weapon like that found in *State v. Childers*, 16 Kan. App. 2d 605, 830 P.2d 50 (1991), *rev. denied* 250 Kan. 806 (1992). Intertwined with this argument is his assertion that the trial court responded improperly to the jury's question regarding whether a BB gun is a firearm.

The jury was instructed that to find Robbins guilty of the aggravated robbery of Mrs. G., it must find that Robbins intentionally took her property, the taking was by force or threat of bodily harm, and that the defendant was armed with a dangerous weapon, to-wit, a firearm or that the defendant inflicted bodily harm on any person [Mrs. G.] in the course of the robbery.

In *Childers*, a subjective test was correctly held applicable to the question of whether there was a dangerous weapon. 16 Kan. App. 2d at 612-14. The jury had been instructed in the following manner:

" 'AS USED IN THIS INSTRUCTION A "DANGEROUS WEAPON" IS:

"A. ANY OBJECT INTENDED BY THE USER TO CONVINCE THE VICTIM THAT IT IS A DANGEROUS WEAPON; AND

"B. WHICH A REASONABLE PERSON UNDER ALL OF THE THEN. EXISTING CIRCUMSTANCES WOULD BELIEVE IS A DANGEROUS WEAPON.'" 16 Kan. App. 2d at 615.

This is substantially the same definition as given in PIK Crim. 3d 56.31, which states: "[An object can be a dangerous weapon if intended by the user to convince the victim that it is a dangerous weapon and which the victim reasonably believed to be a dangerous weapon.]"

The Notes on Use state:

"When there is an issue as to whether the defendant was 'armed with a dangerous weapon,' the bracketed definition should be used. *State v. Colbert*, 244 Kan. 422, 769 P.2d 1168 (1989). In *Colbert*, the Court held in Syl. ¶ 3: Whether or not a robber is 'armed with a dangerous weapon' for aggravated robbery purposes is determined from the victim's point of view (K.S.A. 21-3427). An object can be a dangerous weapon if intended by the user to convince the victim that it is a dangerous weapon and the victim reasonably believes it is a dangerous weapon. Hence, an unloaded gun or a gun with a defective firing mechanism may be a dangerous weapon within the purview of the aggravated robbery statute."

There was no objection to the aggravated robbery instruction and, therefore, our standard of review is whether the instruction was clearly erroneous.

Several of our cases have reiterated the rule that it is not necessary for the State to show that the robber actually exhibited a weapon, and it is only required that there be some substantial evidence to raise a reasonable inference that the defendant was armed. See *State v. Holbrook*, 261 Kan. 635, 639, 932 P.2d 958 (1997); *State v. Robertson*, 225 Kan. 572, 574, 592 P.2d 460 (1979). A review of these cases indicates that it was error not to include the recommended PIK definition for a dangerous weapon; however, we find that the omission was not clearly erroneous. In this case, the question of whether there was a dangerous weapon for purposes of aggravated robbery hinged on whether the Gs' version of the robbery was believed or the defendant's. Robbins denied having any weapon and denied ever threatening to use a weapon against the Gs. The Gs testified to hearing a weapon and being threatened with being shot. They told the police that they thought there was a weapon. The jury clearly believed the Gs rather than

Robbins, and the evidence supported· a finding that there was a dangerous weapon within the meaning of the definition.

Robbins also complains about the trial court's response to the jury's mid-deliberation question. "We need to know if a BB rifle is considered a firearm." After a conference, the court noted that the term "firearm" was used in both the aggravated robbery instruction and the felony possession of a firearm instruction. The court attempted a definition covering both instances and told the jury that as to the aggravated robbery charge, a BB gun may be considered to be a dangerous weapon, but as to the felony possession of a firearm charge, a BB gun may not be considered to be a dangerous weapon.

Robbins argues this answer was erroneous. The trial court has great discretion regarding the extent and substance of its responses under K.S.A. 22-3420(3) to jury questions during deliberations regarding matters of law or evidence in the case. *State v. Morris*, 255 Kan. 964, 985-86, 880 P.2d 1244 (1994). We said in *Morris*: "The important consideration is that the jury be properly instructed on the essential issues presented at the trial, and this is particularly true in a criminal proceeding when the question presented by the jury involves the basic elements of the criminal offense on which the defendant is being tried." If reasonable persons could differ about the propriety of the trial court's decision, there will be no abuse of discretion. *Morris*, 255 Kan. at 986.

Defense counsel told the trial court that the answer "should include the statement ·'if perceived as such by the victim.' " He argues that had his suggestion been followed, the jury would have acquitted Robbins of aggravated robbery and most of the other charges. We do not agree. The court's response was actually technically correct: a BB gun could be considered a dangerous weapon—depending on the circumstances. However, in retrospect, a better answer might have been to supply the jury with the recommended PIK instruction defining dangerous weapon for purposes of the aggravated robbery charge. As we have stated, the jury resolved this matter based upon the credibility of Robbins' versus the Gs' version of the events. The jury found Robbins not guilty of the possession of a firearm charge and obviously believed the Gs'

testimony, which was certainly sufficient to uphold the existence of a dangerous weapon in this case. No different outcome would have been reached had the "if perceived as such by the victim" wording championed by Robbins been given.

*Instruction of voluntary intoxication*

Robbins also asserts that the trial court erred in denying his request for an instruction on voluntary intoxication. His argument lacks merit. For specific intent crimes, voluntary intoxication is only considered as a defense if it renders the defendant "substantially incapable of knowing or understanding the wrongfulness of his conduct and of conforming his conduct to the requirements of law." K.S.A. 21-3208(1). Here, Robbins by his own testimony indicated he knew what was happening and decided to continue with the crime because he figured he was in trouble anyway. He made an effort to conceal his face and voice which showed his awareness of the criminal nature of his acts. The evidence showed that he knew exactly what he was doing and knew it was wrong. The trial court did not err in declining to give an instruction for voluntary intoxication.

*Lesser included crimes*

Robbins next contends the trial court erred in not instructing the jury on the lesser included crimes of attempted aggravated criminal sodomy of Mrs. G. and unlawful criminal restraint of Mr. G. Our rule is well recognized that a criminal defendant is entitled to instructions on all lesser included offenses supported by the evidence at trial as long as: (1) such evidence, when viewed in the light most favorable to the defendant's theory, would justify a verdict in accord with that theory and (2) the evidence at trial does not exclude a theory of guilt on the lesser offense. *State v. Moncla,* 262 Kan. 58, 73-74, 936 P.2d 727 (1997); see also *State v. Borthwick,* 255 Kan. 899, Syl. ¶ 10, 880 P.2d 1261 (1994) (trial court's duty to instruct arises only when the evidence at trial is such that the defendant might reasonably be convicted of the lesser offense).

Robbins argues that attempted criminal sodomy should have been instructed on because there was no physical evidence that rape or criminal sodomy took place and, further, because the jury

could have concluded that his attempts at penetration were unsuccessful due to intoxication. This argument is without merit. Mrs. G. testified she was anally sodomized and that her vagina was digitally penetrated. Robbins denied that he ever sexually assaulted Mrs. G. in any way. He either committed the crimes or he did not; there was no evidence of an attempt and a lesser included charge for attempted aggravated criminal sodomy was not required by the evidence.

As to the unlawful restraint contention, Robbins argues that he did not actually kidnap Mr. G., but only unlawfully restrained him. His argument that there was no evidence of force or threat is without merit and is directly contradicted by the Gs. K.S.A. 21-3424 (Ensley 1988) defines unlawful restraint as "knowingly and without legal authority restraining another so as to interfere substantially with his liberty." As relevant here, kidnapping is "the taking or confining of any person, accomplished by force, [or] threat. . . , with the intent to hold such person: . . . . (b) [t]o facilitate flight or the commission of any crime; or (c) [t]o inflict bodily injury or to terrorize the victim or another." K.S.A. 21-3420 (Ensley 1988). Robbins was charged with taking or confining Mr. G. by force or threat. The jury was instructed that it must find that Robbins took or confined Mr. G. by force or threat with intent to inflict bodily injury or to terrorize him or to facilitate the commission of a crime, to wit: aggravated robbery, robbery, or theft.

This was clearly not a case of mere unlawful restraint. At the least, the evidence showed use of force or threat to carry out Mr. G.'s confinement. The evidence did not support a finding that Robbins merely knowingly and without legal authority restrained Mr. G. The unlawful restraint instruction need not have been given.

*Cumulative error*

Robbins attempts a cumulative error argument by stating the previous alleged errors, coupled with the taking of his motion to dismiss the unlawful possession of a firearm under advisement rather than ruling on it, and the failing to define a dangerous weapon somehow resulted in cumulative error. We have stated:

"Cumulative trial errors, when considered collectively, may be so great as to require reversal of the defendant's conviction. The test is whether the totality of the circumstances substantially prejudiced the defendant and denied the defendant a fair trial. No prejudicial error may be found upon this cumulative effect rule, however, if the evidence is overwhelming against the defendant." *State v. Humphery*, 267 Kan. 45, Syl. ¶ 10, 978 P.2d 264 (1999).

We note that the jury acquitted Robbins of the charge of unlawfully possessing a firearm within 10 years of having been convicted of a felony, and the evidence against Robbins on the other charges was overwhelming. Based on our review of the record, we do not believe Robbins was denied a fair trial by reason of cumulative trial error.

*Multiplicity*

The argument Robbins makes with the most merit and which poses the most difficulty for us is that the crimes of aggravated robbery, aggravated kidnapping, kidnapping, rape, and aggravated criminal sodomy were multiplicitous. Whether convictions are multiplicitous is a question of law subject to unlimited review. *State v. Vontress*, 266 Kan. 248, 255, 970 P.2d 42 (1998). Multiplicity is the charging of a single offense in several counts of a complaint or information. The reason multiplicity must be considered is that it creates the potential for multiple punishments for a single offense in violation of the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution and section 10 of the Kansas Constitution Bill of Rights. In *Vontress*, we said:

"The State may not split a single offense into separate parts where there is a single wrongful act which does not furnish the basis for more than one criminal prosecution. However, where the criminal conduct of the defendant supports convictions for more than one crime, K.S.A. 21-3107 provides statutory authority for multiple convictions even though the criminal conduct of a defendant consists of a single transaction. *State v. Mincey*, 265 Kan. 257, 262, 963 P.2d 403 (1998).

"The test concerning whether a single transaction may constitute two separate and distinct offenses is whether the same evidence is required to sustain each charge. If not, the fact that both charges relate to and grow out of the same transaction does not preclude convictions and sentences for both charges. 265 Kan. at 262-63. Multiplicity does not depend upon whether the facts proved at trial are actually used to support conviction of both offenses charged; rather, it turns upon whether the elements of proof necessary to prove one crime are also necessary to prove the other. 265 Kan. at 263." 266 Kan. at 255-56.

In examining a multiplicity issue, we are mindful that a single offense may not be divided into separate parts and a single wrongful act may not generally furnish the basis for more than one criminal prosecution; offenses do not merge where each offense requires proof of a fact not required in proving the other; and offenses do not rise out of a single wrongful act where they are committed separately and severally at different times and places. *Mincey*, 265 Kan. at 265.

K.S.A. 21-3107, as applicable in January 1992, states in pertinent part:

"(1) When the same conduct of a defendant may establish the commission of more than one crime under the laws of this state, the defendant may be prosecuted for each of such crimes. Each of such crimes may be alleged as a separate count . . . .

"(2) Upon prosecution for a crime, the defendant may be convicted of either the crime charged or an included crime, but not both. An included crime may be any of the following:

(a) A lesser degree of the same crime;

(b) an attempt to commit the crime charged;

(c) an attempt to commit a lesser degree of the crime charged; or

(d) a crime necessarily proved if the crime charged were proved."

Thus, K.S.A. 21-3107(2) does not permit a defendant to be convicted of both the crime charged and an included crime of the crime charged.

Subsection (2)(d) is relevant to some of Robbins' multiplicity arguments. In determining whether a crime is an "included crime" under K.S.A. 21-3107(2)(d), a two-prong test as described in *State v. Fike*, 243 Kan. 365, 368, 757 P.2d 724 (1988) applies. The first step is to determine whether all of the statutory elements of the lesser crime are among the statutory elements required to prove the greater crime. If so, then the lesser crime is a lesser included offense of the greater crime. Even if the elements differ, the inquiry is not over. Under the second prong, the court determines whether the factual allegations of the charging document and the evidence required to be adduced at trial to prove those allegations would also necessarily prove the lesser crime. If so, then there is multiplicity. *State v. Warren*, 252 Kan. 169, 175-81, 843 P.2d 224 (1992). The *Fike* test has been frequently applied in performing

multiplicity analyses. K.S.A. 21-3107 was amended effective July 1, 1998. L. 1998, ch. 185, § 1. Although *Fike* appears irrelevant under the amended statute, the prior version applies in this case.

(A) *Rape and aggravated criminal sodomy*. Robbins asserts that the rape and aggravated criminal sodomy were really one crime. Robbins' act of penetrating Mrs. G.'s vagina with his finger was completely separate from his act of penetrating Mrs. G.'s anus with his penis. The elements of the two crimes do not match; the facts for one did not necessarily prove the other; and the acts were committed separately, entailed penetration of different parts of Mrs. G.'s body, and entailed the use of different "objects" for penetration. See K.S.A. 1991 Supp. 21-3501(1); K.S.A. 21-3502(1)(a) (Ensley 1988); K.S.A. 21-3506(c) (Ensley 1988); K.S.A. 1991 Supp. 21-3501(2); *State v. Zamora*, 247 Kan. 684, 693-94, 803 P.2d 568 (1990). Robbins speculates that he only stuck his finger in Mrs. G.'s vagina while looking for her anus. There is no evidence to support such a theory. This argument lacks merit.

(B) *Aggravated robbery and aggravated kidnapping*. Robbins also argues that the State relied on the aggravated robbery as an element of the crime of aggravated kidnapping and that, therefore, the aggravated robbery is a lesser included crime of the aggravated kidnapping. He seems to be referring to the "intent to facilitate" aspect of the aggravated kidnapping charge.

For *aggravated kidnapping*, Robbins was charged with taking or confining Mrs. G. by force or threat, done with intent to hold Mrs. G., to inflict bodily injury or to terrorize the victim or another, or to facilitate the commission of a crime, to wit: aggravated robbery, and that Robbins inflicted bodily harm on Mrs. G. The jury was instructed that a conviction would also be appropriate if the taking or confining was carried out with the intent to hold Mrs. G. to facilitate a robbery or theft, as these were lesser included crimes of the aggravated robbery on which the jury had been instructed. To convict Robbins of aggravated robbery, the jury had to find that Robbins unlawfully took a VCR, stereo, and television from the presence of Mrs. G. by force or threat of bodily harm to Mrs. G., and that Robbins was armed with a dangerous weapon or that he inflicted bodily harm on Mrs. G. in the course of such robbery.

The elements of the two crimes are clearly not identical. It was not necessary for the State to prove an aggravated robbery in order to prove that an aggravated kidnapping was done with the intent to hold Mrs. G. for the purpose of facilitating an aggravated robbery. "The crime of kidnapping as defined in K.S.A. 21-3420 is completed when the defendant forcefully takes another for the purpose of facilitating flight or the commission of any crime. The statute does not require a conviction or even the filing of a complaint on the underlying crime in order to properly charge the defendant with kidnapping." *McLain v. State,* 14 Kan. App. 2d 329, Syl. ¶ 3, 789 P.2d 1201, *rev. denied* 246 Kan. 768 (1990). The same has been said with regard to charging and convicting a defendant on aggravated kidnapping. See *Carmichael v. State,* 18 Kan. App. 2d 435, Syl. ¶ 8, 856 P.2d 934 (1993), *aff'd in part and rev'd in part on other grounds Carmichael v. State,* 255 Kan. 10, 872 P.2d 240 (1994). The elements of proof to sustain one charge were not the same as those required to sustain the other and the allegations of the aggravated kidnapping charge did not require evidence to be adduced at trial which would necessarily prove the aggravated robbery. Moreover, the confinement was not slight or merely incidental to the aggravated robbery and had significance independent of the aggravated robbery such that the aggravated kidnapping constituted a separate crime. See *State v. Hammond,* 251 Kan. 501, 505-06, 837 P.2d 816 (1992) (finding no multiplicity between aggravated robbery and aggravated kidnapping charges under similar facts).

(C) *Aggravated kidnapping, rape, and aggravated criminal sodomy.* Finally, Robbins argues the aggravated kidnapping, rape, and aggravated criminal sodomy of Mrs. G. were part of one continuous transaction and that because the State relied on rape or aggravated criminal sodomy to establish bodily harm for the charge of aggravated kidnapping, it makes these charges multiplicitous. The State's response is not helpful as it consists of merely comparing the statutory elements of the crimes. Clearly the statutory elements of each crime required proof of elements not included in the other crimes. That is not the real point of contention in this case, however.

The fact that several charges relate to and grow out of the same transaction does not preclude convictions and sentences for each; rather, the question is whether the elements of proof necessary to prove one crime are also necessary to prove the other. *Vontress,* 266 Kan. at 256. Robbins' "same transaction" argument is not dispositive. The confinement of the aggravated kidnapping through the binding of Mrs. G.'s hands behind her back was not inconsequential or merely incidental to the rape or aggravated criminal sodomy as it exceeded the force necessary to accomplish the sex crimes. *Cf. State v. Coberly,* 233 Kan. 100, 661 P.2d 383 (1983) (finding sufficient evidence to support both aggravated kidnapping and rape as separate crimes where confinement not inconsequential or incidental to the rape). Furthermore, Mr. G. testified that his hands were first bound, then his wife was bound, then Robbins returned to Mr. G. to tape his face. Only then did he climb up on the bed and rape and sodomize Mrs. G. This separated the initial binding of Mrs. G. from the later sex acts.

However, Robbins' argument that rape and aggravated criminal sodomy were used to establish bodily harm for the aggravated kidnapping deserves closer attention. The difference between kidnapping and aggravated kidnapping is that the greater crime requires the infliction of bodily harm. K.S.A. 21-3421. It is clear that rape and aggravated criminal sodomy can be used to satisfy the bodily harm element of an aggravated kidnapping charge. See *State v. Peltier,* 249 Kan. 415, 420, 819 P.2d 628 (1991), *cert. denied* 505 U.S. 1207 (1992).

Although the charging document in this case did not specify that rape and/or sodomy was the bodily harm, the State made clear at trial that it was only relying on the rape and sodomy to establish bodily harm and not on any other suggested violence or physical injury.

At the jury instruction conference, the prosecutor specifically told the court that the kidnapping was charged as an aggravated kidnapping on the basis that the bodily harm to support that charge was either the rape or the aggravated criminal sodomy and that an instruction on the lesser charge of kidnapping was necessary because defense counsel was going to argue that the rape and aggra-

vated criminal sodomy had not occurred. Later, when defense counsel questioned whether the State intended to rely on the red marks on Mrs. G.'s wrists, or instead on the sex crimes for the bodily harm element of the aggravated kidnapping charge, the prosecutor responded that it was only the rape or the aggravated criminal sodomy that would constitute the bodily harm in this case and that the minimal bruising on Mrs. G.'s wrists was not the basis for the State's allegations of bodily harm as the State did not believe those injuries were sufficient in this case.

The last part of the aggravated kidnapping instruction stated:

" 'Bodily harm' includes any act of physical violence, even though no permanent injury results. Unnecessary acts of violence upon the victim, and those occurring after the initial abduction would constitute 'bodily harm.' Rape and Aggravated Criminal Sodomy are acts of violence unnecessary to and not a part of the kidnapping itself."

In closing argument, the prosecutor told the jury:

"It [kidnapping] becomes aggravated when you inflict bodily injury upon someone, and sexually assaulting someone is bodily injury. All that's in the instructions. . . . So the only difference between the aggravated kidnapping against [Mrs. G.] and the simple kidnapping of [Mr. G.] is the fact that [Mrs. G.] was sexually assaulted. If you don't believe [Mrs. G.] was sexually assaulted, then the lesser crime is the crime of kidnapping so you have those choices to make on that charge."

It is clear from the evidence and arguments at trial that the State was requiring the jury to convict on at least one sex crime in order to convict for aggravated kidnapping.

There are several cases which say that a sex crime used to support the bodily harm for aggravated kidnapping is not multiplicitous with, and/or is not an included offense of, the aggravated kidnapping. See *State v. Chears*, 231 Kan. 161, 162-63, 643 P.2d 154 (1982) (comparing elements to conclude that aggravated sodomy and aggravated kidnapping were not multiplicitous even though the sodomy was used to supply the element of bodily harm to make the kidnapping aggravated); *Wisner v. State*, 216 Kan. 523, 525, 532 P.2d 1051 (1975) (comparing statutory elements to find rape is not a lesser included offense of aggravated kidnapping even though the State relied on rape to prove the element of bodily

harm for aggravated kidnapping); *Sharp v. State*, 203 Kan. 937, 942, 457 P.2d 14 (1969) (relying on *Brown* and *Ayers* to find no double jeopardy from convictions for both first-degree kidnapping and forcible rape where the rape provided the bodily harm to support the first degree kidnapping); *State v. Ayers*, 198 Kan. 467, 472, 426 P.2d 21 (1967) (even though rape supplied the element of bodily harm required by first-degree kidnapping statute, prosecution for both offenses not barred); *State v. Brown*, 181 Kan. 375, 389-90, 312 P.2d 832 (1957) (same). However, these cases predate *Fike*, 243 Kan. 365, and they tend to only apply the identity of the elements test contained in the first prong of the *Fike* test.

Two cases post-dating *Fike*, however, have considered the issue. The first is *State v. Blackburn*, 251 Kan. 787, 795, 840 P.2d 497 (1992), where the defendant argued that his convictions of aggravated kidnapping and rape were multiplicitous because they involved the same force and bodily harm. The jury had been instructed that bodily harm includes, but is not limited to, the act of rape. 251 Kan. at 795-96. The *Blackburn* court reasoned that the jury was not required to find that rape was the bodily harm inflicted upon the victim and also noted that evidence of bodily harm, in addition to rape, had been supplied by the victim's testimony. The court found that the evidence introduced to prove aggravated kidnapping and rape did not involve the same force and bodily harm, that the elements of the two crimes were not the same, and that each required proof of a fact not required in proving the other. The opinion then cited *Wisner*, 216 Kan. 523, in summarily rejecting Blackburn's claim that the rape was a lesser included offense of the aggravated kidnapping. 251 Kan. at 796.

*Wisner*, of course, was decided before *Fike*, and the two-prong *Fike* test was not expressly discussed or applied in *Blackburn*. However, the analysis of *Blackburn* could be viewed as loosely following a *Fike* test because the opinion seemed to reason that not only were the statutory elements different but also, on the facts of the case, the evidence introduced to prove each crime did not involve the same force and bodily harm. In any event, *Blackburn* is distinguishable from the present case where the prosecutor expressly told the jury, court, and opposing counsel that the State was relying

only on the sex crimes to satisfy the element of bodily harm for the aggravated robbery.

The second case is *State v. Morfitt*, 25 Kan. App. 2d 8, 956 P.2d 719, *rev. denied* 265 Kan. 888 (1998), where the defendant was convicted of several crimes, including aggravated kidnapping and aggravated indecent liberties. The information alleged that the bodily harm or force element was committed when Morfitt committed aggravated indecent liberties upon the victim. The evidence showed that Morfitt drove the victim around on the pretense of looking for her father and committed aggravated indecent liberties during the trip by placing his hands on her breasts and vaginal area. The Court of Appeals found that under the information and the evidence adduced at trial, there was one continuous act of force and that the crimes were multiplicitous. Although *Morfitt* seems to intertwine its discussion of bodily harm and force, it seems implicit in *Morfitt* that the court was not only bothered by the continuity of the force behind the offenses, but also by the fact the sex crime supplied the bodily harm for the aggravated kidnapping.

In addressing the second prong of *Fike* in *State v. Gibson*, 246 Kan. 298, 300, 787 P.2d 1176 (1990), we cautioned against confusing what the State may have actually proved in its evidence with what the State was required to prove to establish the crime charged and stated that the mere fact the evidence adduced in proving the crime charged may also prove some other crime does not make the other crime an included offense under K.S.A. 21-3107(2)(d). We have also emphasized that under the second prong of the *Fike* test, the court should look at the charging document as well as the evidence that must be adduced at trial to prove the crime charged, and if the evidence which must be adduced at trial to prove the crime charged would also necessarily prove the lesser crime, then the lesser crime is an included crime under K.S.A. 21-3107(2)(d). See *State v. Clardy*, 252 Kan. 541, 543, 847 P.2d 694 (1993).

In *Vontress*, 266 Kan. 248, we found convictions of aggravated battery and aggravated robbery multiplicitous where the sole allegation in the complaint of bodily harm for both offenses was the victim's gunshot wounds. Even though each charge required proof of a statutory element not required by the other, we found that

under the complaint and evidence, to prove the bodily harm for aggravated robbery, the State was required to prove one fact—that Vontress shot the victim—the same fact necessary to prove great bodily harm for the aggravated battery. 266 Kan. at 256-57.

In the present case, the charging document did not expressly state that rape or aggravated criminal sodomy was the bodily harm for the aggravated kidnapping charge. However, we deem it significant that the prosecutor expressly told the jury that it was only relying on the sex crimes to prove bodily harm for aggravated kidnapping and told the jurors that if they did not believe the sex crimes occurred, then they should convict only for kidnapping. Thus, as to at least one of the sex crimes, the same evidence used to prove an element of the aggravated kidnapping was also necessary to prove the sex crime, and the jury would necessarily have found Robbins guilty of at least one of the sex crimes upon finding him guilty of the aggravated kidnapping. Under these unique circumstances, we conclude that the convictions are multiplicitous.

The crime which is actually multiplicitous under these unique facts is that of aggravated kidnapping. Without the sex crime evidence, the necessary element of bodily harm is not proved. This does not mean, however, that the crime of kidnapping of Mrs. G. was not proved by substantial competent evidence.

Our situation here is similar to *State v. Kingsley*, 252 Kan. 761, 782, 851 P.2d 370 (1993), where a conviction of aggravated arson was not deemed to be supported by sufficient evidence, but there was substantial evidence of the lesser offense of arson. In *Kingsley*, we followed *State v. Moss*, 221 Kan. 47, 50, 557 P.2d 1292 (1976), and *State v. Smith*, 4 Kan. App. 2d 149, 153, 603 P.2d 638 (1979), and reversed the aggravated arson conviction and vacated the sentence thereunder but affirmed a conviction of the lesser offense of arson and remanded for resentencing of that offense.

We follow *Kingsley* and reverse the conviction of aggravated kidnapping and vacate the sentence thereunder but affirm the conviction of the lesser offense of kidnapping and remand for sentencing on that offense. We recognize this will not change the controlling sentences because both rape and aggravated criminal sodomy were class B felonies, and, with the exception of the kid-

napping of Mr. G., all sentences in this case were ordered to run concurrently. It is necessary, however, to have Robbins sentenced to the proper crime of conviction, and we must remand for him to be sentenced to the kidnapping of Mrs. G.

This result is consistent with *State v. Garcia*, 272 Kan. 140, 32 P.3d 188 (2001). As is pointed out in *Garcia*, the multiplicity analysis changes as the result of the 1998 amendments to K.S.A. 21-3107, but the crimes here were committed in 1992 requiring the result we reach herein. 272 Kan. at 147.

*Sufficiency of the evidence*

Robbins next argues there was insufficient evidence to support his convictions for the kidnapping of Mr. G. and the aggravated robbery of Mrs. G. In reviewing a challenge to the sufficiency of the evidence, our standard is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Johnson*, 266 Kan. 322, 326, 970 P.2d 990 (1998).

In order to convict Robbins of kidnapping Mr. G., the jury was instructed that it had to find Mr. G. had been taken or confined by force or threat and that this was done with the intent to inflict bodily injury or to terrorize the victim or another, or to facilitate the commission of a crime, to wit: aggravated robbery, robbery, or theft.

There was sufficient evidence that the confinement of Mr. G. involved force or threat and that it was done to inflict bodily injury, as he was taped beyond that necessary to facilitate the crimes. Robbins' statements and other actions also provided evidence of an intention to terrorize. See *State v. Hammond*, 251 Kan. 501, 505, 837 P.2d 816 (1992); *State v. Maxwell*, 234 Kan. 393, 400, 672 P.2d 590 (1983). Finally, there was more than sufficient evidence to show that the confinement was done to facilitate commission of an aggravated robbery, robbery, or theft. There was clearly sufficient evidence to support the conviction for kidnapping Mr. G.

As to the aggravated robbery charge, a VCR, a stereo, a television, and an automobile were taken from the presence of Mrs. G.

by force or threat of bodily harm while Robbins was armed with a dangerous weapon in violation of K.S.A. 21-3427. As previously discussed, the evidence showed that Robbins was armed with a dangerous weapon under the applicable subjective definition required for this offense. Robbins' argument that the property was not in Mrs. G.'s presence is without merit. See *State v. Hays*, 256 Kan. 48, 64-65, 883 P.2d 1093 (1994) (property taken from one room of victim's home while victim is restrained in another room was taken from her presence). There was sufficient evidence to uphold the conviction for aggravated robbery.

*Motion in limine*

Finally, Robbins contends the trial court abused its discretion by denying his motion in limine whereby he sought to exclude any mention of the Gs dog. If a motion in limine is denied, the party who made the motion must object to the evidence at trial to preserve the issue for appeal. *State v. Ordway*, 261 Kan. 776, Syl. ¶ 6, 934 P.2d 94 (1997). Robbins failed to object at trial to the numerous references to the dog. This issue is not preserved for appeal.

Affirmed in part, reversed in part, and remanded for sentencing on the conviction of kidnapping of Mrs. G.

McFARLAND, C.J., concurring in part and dissenting in part: I strongly disagree with the majority opinion's analysis of the multiplicity issue and its vacating of the aggravated kidnapping conviction.

A like issue was raised in *State v. Garcia*, 272 Kan. 140, 32 P.3d 188 (2001), this day decided. My dissent therein sets forth my position on this issue.